## TOMLINSON v. SMITH et al.

In an agreement for the sale of land, which provides as follows: "But should the taxes, and the note above described, not be paid by the time they become due, then I reserve the right to sell the above-described land at any time thereafter, to any person or persons," time is of the essence of the contract.

Where a bill in chancery to enforce the specific performance of a contract to convey land, in which time was of the essence of the contract, alleged that the respondent had waived the performance of the contract as to time, and set up a contract as follows: "In April, 1854, in a conversation had at Bellevue, your orator informed said W. (the agent of respondent), that your orator had become the assignee of said B. (with whom the contract was made), in the contract aforesaid, and said W. agreed to wait on your orator for several months for payment of said note (the note given for the price of the land), and that he would convey the said land to your orator, on payment of said note and interest, providing that all the taxes were paid," as evidence of the waiver; and where the bill alleged further, that the com-

plainant had paid all the taxes on the land; *Held*, That the subsequent con-
tract alleged, was without mutuality or consideration, and was not sufficient
to revive, and extend the time, on the original contract.

### *Appeal from the Dubuque District Court.*

THIS is a bill in chancery to enforce the specific perform-
ance of a contract to convey real estate, commenced by Tom-
linson against Smith and others. The bill, in substance,
shows that Wilson, being the agent of Fain and Branner,
for the sale of land warrants, on the 23d of June, 1851, in
their behalf, entered into an agreement with one Blancet, to
locate the lands described in the bill, in their names, and
took the note of Blancet, payable to said Fain and Branner,
for two hundred and twenty dollars, in one year; and on
their part, Wilson, as such agent, executed a writing, de-
scribing said note, and stipulated, that if the note should be
paid, on or "before the time it became due, and the taxes
arising on the land shall be paid," to convey the land to
Blancet, which writing contained a concluding clause, as
follows: "But should the taxes and note above described,
not be paid by the time they become due, then I reserve the
right to sell the above-described land at any time thereafter,
to any person or persons." This agreement was assigned by
Blancet to one Cargrave, in October, 1851, and he, in March,
1852, assigned the same to plaintiff.

It is alleged, that in April, 1854, in a conversation had
between complainant and said Wilson at Bellevue, complain-
ant informed said Wilson, that he had become the assignee
of said Blancet in the contract as aforesaid, and said Wilson
agreed to wait on complainant for several months for pay-
ment of said note, and that he would convey the said land
to complainant, on payment of said note and interest, pro-
viding that all the taxes were paid. Complainant avers that
he paid all the taxes on the lands; that Wilson had full
power to give the extension, and did give the same, as agent
for Fain and Branner; that Thomas Smith, who well knew
that complainant had become the purchaser of said land,

Tomlinson v. Smith et al.

and assignee of said Blancet, intending to wrong complain-
ant, on the eleventh day of May, 1854, applied at the office
of Wilson, and represented that Blancet had gone to Cali-
fornia, and that he, the said Smith, wished to purchase the
land, and that there was nobody who claimed the said land,
but did not state that complainant had become the assignee
of Blancet, though such fact was well known to said Smith;
and that Wilson having temporarily forgotten the conversa-
tion between him and complainant, sold the land to Smith,
who bought with notice that complainant had equities in the
said land : That on the 12th July, 1854, complainant ten-
dered to Smith the amount paid by him for the land, with a
deed for him to execute; that Smith declined the money,
and refused to execute the deed; that the lands have
greatly risen in value; and that part of the lands have passed
into the hands of innocent purchasers. Several defendants
are made to the bill, and complainant prays that the sale to
Smith may be decreed fraudulent on his part; that an in-
quiry may be had as to what portions of said lands have
passed to innocent purchasers; that Smith be compelled to
convey the residue to complainant, and pay over the money
received for the parts sold. The amount paid by Smith for
the land, is brought into court, and tendered by the bill.
To this bill, the respondents demurred, on the ground,
among others, that it contained no equity, which demurrer
was sustained, and the bill dismissed. The complainant ap-
peals, and assigns the sustaining of the demurrer as error.

*Smith, M'Kinlay & Poor*, for the appellant.

*Ben. M. Samuels*, for the appellees.

Isbell, J.—In considering this case, we shall regard the
last point made by the demurrer only, which is " there is
no equity in complainant's bill." Though other parties are
made to the bill, relief is prayed against Smith alone. The
original agreement, which is at the foundation of this case,
was made between Blancet, of whom the complainant is as-

signee, and Fain and Branner, grantors of Smith. This agreement is substantially on the part of Blancet, that he will pay, on or before a year from the 23d of June, 1851, to Fain and Branner, the sum of two hundred and twenty dollars (for which he gave his note), and all taxes on the land in controversy. On the part of Fain and Branner, it is agreed that if he does so, he shall have a deed for the land, on request. But a reservation is made in the agreement, that if he does not pay the taxes and note, by the time they become due, they shall have " the right to sell the land at any time thereafter, to any person or persons." That time was of the essence of this contract, and so understood to be by the original contracting parties, and by the complainant, who attempts to set up that he has stipulated for an extension of time on the same, from the express stipulation of the agreement itself, there is no room to doubt.

There is nothing apparent in the bill, to show that Blancet was ever in possession of the land, or that prior to its purchase from the government, he had any claim upon, or interest in it. There is, then, nothing to give this contract anything of the character of a mortgage. We must regard it, as what it clearly purports to be on its face, a conditional covenant to convey. The record discloses nothing whereby it appears, that from the time the note fell due in June, 1852, up to April, 1854, complainant had in any way evinced an intention to comply on the part of Blancet, by paying the note, and though during all this time, he had been the assignee of Blancet, it does not even appear that Fain and Branner had notice of this fact. Fain and Branner, by the terms of the contract, had a right to sell to any persons or persons, notwithstanding the note of Blancet was still in their hands, after it became due, it remaining unpaid. *Notson* v. *Barret*, 1 G. Greene, 303. What effect a sale would have upon the right to recover upon this note, is another question, and one not stipulated for in the contract.

Complainant having thus lain by, without evincing any intention to take the land, or in any manner becoming bound to discharge the contract on the part of Blancet, until the land

Tomlinson v. Smith et al.

had risen in value, and he perhaps beyond the reach of pro-
cess, leaves complainant in no condition to be the peculiar
favorite of a court of equity.   See the remarks of Kent,
Chancellor, in *Benedict* v. *Lynch*, 1 John. Ch. 375, and
grounds of special performance reviewed and case cited.

The right that Fain and Branner had to sell the land, af-
ter the note fell due, continued, unless by some act on their
part, they divested themselves of that right.

It is claimed they have done this.   This leads us to con-
sider the pretended agreement with Wilson, whereby it is
claimed this contract was revived, and the time extended on
the same.   This is stated in the following language: "In
April, 1854, in a conversation had between your orator and
said Wilson, at Bellevue, your orator informed said David S.
Wilson, that your orator had become the assignee of said
Blancet, in the contract as aforesaid, and said Wilson agreed
to wait on your orator for several months for payment of
said note, and that he would convey the said land to your
orator, on payment of said note and interest, providing that
all the taxes were paid.  And your orator charges that he
paid all the taxes on the said lands."   Does this show a *valid,
binding* agreement to revive the contract and extend the time
for its performance ? . We think not.   In the first place, there
is no mutuality.   Complainant was not bound to pay the
note of Blancet, nor does he, by anything here shown, become
bound.   Again, there appears no consideration whatever for
this agreement.   The only plausible pretext for one, is that
complainant, *in faith of the promise* of Wilson, has been in-
duced to pay taxes which he would otherwise not have paid.
But while it might so appear at first view, still it is not so
stated in the bill.   True, the bill charges that complainant
has paid all the taxes on said land, but not that he has paid
in pursuance of the agreement, and from anything the bill
shows, these taxes may have been paid before the conversa-
tions with Wilson, or after the sale to Smith.

We think this contract or agreement with Wilson, as stated,
is without mutuality, or consideration, and was not sufficient
to revive and extend the time on the original contract; and,

that, therefore, Fain and Branner had a right to sell at the time they sold to Smith, and, of consequence, Smith had a right to buy.

The demurrer will therefore be sustained, and the bill dismissed.