FLORINE A. DESEUMEUR

*v.*

FREDERICK RONDEL.

[Decided November 19th, 1909.]

1. A testamentary disposition contained in one writing disposing of property held jointly is a "joint will;" whereas, the same document, if it refers to and deals with property held separately, would be a "mutual will."

2. In a suit for specific performance, the court should, as far as possible, settle doubtful questions of law affecting the title, and compel the vendee to take a title which the court finds free from defects so far as doubtful questions of law are concerned.

3. Where the validity of a title depends on facts which are not of such a character as to be susceptible of proof at any and all times by those who may need to prove them for their protection, the title should not be forced on an unwilling vendee in a suit for specific performance.

4. A contract of two persons on a sufficient consideration for the benefit of a third person is enforceable against the contractor.

5. An agreement between two persons on a legal consideration to dispose of their property at death in a specified manner, or to specified persons, is enforceable.

6. B., owning certain lots and personal property, and his wife, owning certain other lots, executed a mutual will, providing for the life use of all of the property by the survivor, and on the survivor's death that the executors should sell all the real and personal property of which the survivor should die seized and divide the proceeds into two equal parts, one for the benefit of the heirs of the husband, and the other for the heirs of the wife. B. died first, and the paper was probated as his will, after which the wife married another and conveyed all of the lots to her then husband. She thereafter died, leaving a new will bequeathing everything to her second husband, and he died leaving a will by which he devised the lots to C., who conveyed to plaintiff, who also received a deed

to two of the lots originally owned by B. from his executor.—*Held,* that since the paper was signed by both parties, if based on a sufficient consideration, it might be enforceable in equity by the heirs of B. and his wife, regardless of her attempt to repudiate the same by her will. But where complainant's title to the lots depended on a question of fact, proof of which was not necessarily available to the vendee at all times, he would not be compelled to take the title in a suit for specific performance.

Heard on bill, answer, replication and proofs in open court.

This is a bill for specific performance. The complainant charges that she is the owner in fee-simple of lots Nos. 195, 197, 199, 202, 203 and 204 on a certain map of the town of West Hoboken in this state, and that on the 25th day of January, 1909, she and the defendant, Frederick Rondel, made an agreement in writing by which she agreed to sell and convey the said lots to him for $7,800, free of all encumbrances, except a mortgage for $3,000 then a lien on the premises; that upon the day fixed for passing title she tendered to the defendant a deed, duly signed, sealed and acknowledged, conveying in due form of law the above-mentioned premises, which she claims are free and clear of all encumbrances excepting the said mortgage, which deed the defendant refused to accept.

The defendant admits the facts charged in the bill, and justifies his refusal by alleging that the complainant had not such a title to the property in question as to require the defendant to take it, and sets up the facts which he claims show that the complainant had not a title in fee-simple free of encumbrances excepting the mortgage aforesaid.

*Messrs. Doremus & Lecour,* for the complainant.

*Mr. Jason R. Elliott,* for the defendant.

GARRISON, V. C.

The following are the facts as proven before me:

On or before the 2d of June, 1854, Alexander Bisson was the record owner of lots Nos. 195, 197, 199, 202, 203 and 204 on a

certain map of the town of West Hoboken in this state. On the 2d of June, 1854, Alexander Bisson and Elizabeth F., his wife, conveyed to Jean Baptiste Teeson lots Nos. 197, 199, 202 and 203, and on the 8th of June, 1854, Teeson conveyed the lots just designated to Elizabeth F. Bisson. On the 20th of June, 1855, Alexander Bisson and Elizabeth F. Bisson signed a paper reading as follows:

"IN THE NAME OF GOD, AMEN. We, Alexander Bisson and Elizabeth Francoise Bisson; nee Wouters; his wife, of Weehawken, in the Township of North Bergen, County of Hudson and State of New Jersey, do hereby, make, publish and declare this our last will and testament, in manner following; that is to say: Whereas we are, at this present time in good bodily health, and of sound and disposing mind and memory, (blessed be God for the same) And whereas it is our mutual desire to make a final settlement of our whole earthly goods and possession, in the manner hereinafter directed.—And Whereas I, the said Elizabeth Francoise Bisson, am seized in fee, in my own right of certain real estate, with the buildings thereon, at Weehawken aforesaid, which was purchased with the proceeds of my lawful inheritance, as one of the heirs of my father,— and I the said Alexander Bisson, am possessed of certain personal property therein situated.

"*First.* We do hereby order and direct, our executors hereinafter named, as soon as they take upon themselves the management of our affairs, to pay and discharge all our and each of our just debts deathbed and funeral expenses.

"*Secondly.* It is our will that upon the death of either of us, the whole real and personal property, now belonging to us, or either of us, be possessed, used and enjoyed by the survivor, to have and to hold the same to me the said Alexander Bisson, during my natural life in the event of my surviving my said wife; or me the said Elizabeth Francoise Bisson, in the event of my surviving my said husband, during the period of my natural life, together with the rents, issues and profits of the said real estate and the full use, enjoyment and control thereof.

"*Thirdly.* Upon the death of the survivor of us, we do hereby order and direct our executors hereinafter named, to sell and absolutely dispose of the whole real estate and personal property of which such survivor shall die seized and possessed as aforesaid and to divide and set apart the proceeds of such sale into two equal parts, one of which shall become the property of the heirs at law of me the said Alexander Bisson, residing at Paris, in the Empire of France, or elsewhere and the other one half part, shall become the property of the heirs at law of me, the said Elizabeth Francoise Bisson, residing in the Kingdom of Belgium or elsewhere. —It being our mutual will and intention, that this disposition of our whole estate, real and personal, shall take effect upon the demise of the survivor of us the said testator and testatrix.

"*Lastly.* We do hereby nominate, constitute and appoint, Edward Dubois of Weehawken aforesaid and Frederic J. Emerich of Hoboken, executors of this our last will and testament.

"IN WITNESS WHEREOF we have hereunto set our hands and seals the twentieth day of June in the year of our Lord one thousand eight hundred and fifty five.

"Signed, sealed, published and declared by the said testator and testatrix, to be their last will and testament, in the presence of the said testator and testatrix and in our presence, who in their presence and in the presence of each other at their request subscribed our ———— as witnesses hereto.

"BISSON [L. S.]
"E. F. BISSON [L. S.]

"Alex. Watson.
"Adolph W. Marten, City of Hudson.
"Wm. Edelstein."

This paper, on the 22d day of December, 1859, was probated in Hudson county, in this state, as the will of Alexander Bisson, he having died.

Elizabeth F. Bisson subsequently married a man who is indifferently called Vital Dallier or Dallier Vital.

On the 6th of April, 1864, Elizabeth F. and Vital Dallier made a deed to Zelie Noonan Daveau, purporting to convey lots Nos. 195, 197, 199, 202, 203 and 204.

On the 6th day of October, 1865, the last-named grantee and Jules, her husband, made a deed for the same lots to Vital Dallier.

On the 26th day of October, 1875, Elizabeth F. Dallier having died in the meantime, a paper was admitted to probate in Hudson county, in this state, as her will, which paper is dated February 25th, 1863, and by the terms of which she devises and bequeaths everything to her husband, Dallier, and makes him her executor.

On the 1st of August, 1879, the will of Vital Dallier was admitted to probate in Hudson county, in this state, by the terms of which he devised all of his property to Seraphin Clement.

On the 14th of April, 1880, Seraphin Clement made a deed to Florine A. Deseumeur for lots Nos. 195, 197, 199, 202, 203 and 204.

On the 14th of April, 1880, Frederic J. Emerich, executor of Alexander Bisson, deceased, made a deed to Florine A. Deseumeur for lots Nos. 195 and 204.

On the 25th of January, 1909, Florine A. Deseumeur (the

complainant herein), by a contract in writing, agreed to convey to Frederick Rondel (the defendant herein), for $7,800 the six lots above described free of all encumbrance, excepting a certain mortgage.

It will be noted that at the time of the making of the paper-writing in form a will by Alexander Bisson and Elizabeth F. Bisson, his wife, on the 20th day of June, 1855, the title to four of the lots, namely, Nos. 197, 199, 202 and 203, was in Elizabeth, and the title of two of the lots, namely, Nos. 195 and 204, was in Alexander.

There is no proof before me concerning the other possessions of either the husband or wife at the date of the making of this paper-writing, or at the date of the probate of it as the will of Alexander Bisson on the 22d day of December, 1859.

The contention of the complainant is that the paper-writing just referred to was a joint or mutual will; that revocability is an essential element of a will, and that Elizabeth had the right to and did revoke the same so far as it affected her and her property.

The complainant points out that after the death of Alexander his wife, Elizabeth, married Dallier, and, through a conduit, conveyed all six lots to her husband, and subsequently, upon her death, was found to have made a will dated the 25th of February, 1863, devising all of her real estate to Dallier. She therefore claims that Elizabeth (Bisson) Dallier revoked the joint and mutual will, as they term the paper of June 20th, 1855, and transmitted the title (as they claim she had a right to do) to Dallier through whom the title comes to the complainant.

The defendant also contended that the paper of the 20th of June, 1855, was a joint or mutual will, but was *not* revocable.

Counsel did not produce to the court any direct authority, nor did the court in its own investigation find any direct authority in the State of New Jersey concerning the matter of joint or mutual wills.

There are references in some of the authorities to wills by two parties each in favor of the other, which are sometimes called "counter" or "reciprocal wills." *Duvale* v. *Duvale* (*Vice-Chan-*

*cellor Reed, 1896), 54 N. J. Eq. (9 Dick.) 581 (at p. 588);
S. C. (Court of Errors and Appeals), 56 N. J. Eq. (11 Dick.)
375.* See on the general subject, *1 Jarm. Wills 27; Schoul.
Wills (3d ed.) 456; 1 Wms. Ex. 10,* and there are many
cases which deal with agreements to make wills in favor of par-
ticular persons, and holding that equity will enforce a specific per-
formance of such agreements. *Duvale* v. *Duvale, supra;* particu-
larly, collection of cases *56 N. J. Eq. (11 Dick.) 385; Drake* v.
*Lanning (Vice-Chancellor Pitney, 1892), 49 N. J. Eq. (4 Dick.)
452; Kastell* v. *Hillman (Vice-Chancellor Pitney, 1894), 53
N. J. Eq. (8 Dick.) 49; Vreeland* v. *Vreeland (Chancellor Mc-
Gill, 1894), 53 N. J. Eq. (8 Dick.) 387; Eggers* v. *Anderson
(Court of Errors and Appeals, 1901), 63 N. J. Eq. (18 Dick.)
264; Clawson* v. *Brewer (Vice-Chancellor Emery, 1904), 67 N.
J. Eq. (1 Robb.) 201.*

A testamentary disposition contained in one writing and
disposing of property held jointly is, I presume, precisely re-
ferred to as a "joint will;" whereas, the same document, if it
refers to and deals with property held separately, would prob-
ably be more precisely termed a "mutual will."

Excepting as to questions arising out of the probate, I do not
see that, in principle, there is any distinction between a single
paper signed by two persons disposing of their property in a
certain way, and two separate papers, each signed by one, dis-
posing of their property in the same way. The principle upon
which the courts have dealt with such dispositions of property
has varied in different jurisdictions, and the following cases
will be found to have dealt with it, as indicated:

In England cases will be found on each side of the question,
the court, in the case of *Dufour* v. *Pereira (1769), 1 Dick. Ch.
419,* holding the mutual will was irrevocable after the death of
one of the parties, and in *Hobson* v. *Blackburn (1822), 1 Add.
Eccl. 274,* holding to the contrary.

*Lord Walpole* v. *Lord Orford, 3 Ves. Jr. 402,* on the general
subject of agreements to make such wills.

*Edson* v. *Parsons (1898), 155 N. Y. 555:* Revocability al-
lowed unless circumstances show valid agreement for mutual
wills.

*Ex parte Day (1851), 1 Bradf. (N. Y.) 476:* Joint will revocable as a will, but enforceable in equity as a contract.

*Everdell* v. *Hill (1899), 27 N. Y. Misc. 285:* Agreement to execute mutual or reciprocal wills revocable during life, but the death of one of the parties fixes the obligations, which equity will enforce.

*Cawley's Estate (1890), 136 Pa. St. 628; 10 L. R. A. 93,* see note: Paper signed by both parties; one died; other took the benefits, and later made another will. Latter will admitted as hers. Supreme court affirmed and found that no contract for mutual disposition existed and no consideration. The case, however, seems to me to turn more upon the question of probate than upon the principle which would be applied in a contest between the beneficiaries under the respective wills.

*Evans* v. *Smith, 28 Ga. 98:* One paper signed by two, probated as a joint or double will.

*Lewis* v. *Scofield, 26 Conn. 452:* Similar will presented and validity upheld.

*Betts* v. *Harper, 39 Ohio St. 639:* After death of both signers paper was probated as the separate will of each.

*In re Diez, 50 N. Y. 88:* Joint will of husband and wife sustained.

*Schumaker* v. *Schmidt (1870), 44 Ala. 454:* Two friends joined in a will. Subsequently and during the life of both one made a different will. Original paper held to be a will and not a contract, and therefore revocable.

*Humane Society* v. *McMurtrie (1907), 229 Ill. 519:* Mother and son made joint will, giving survivor property with remainder over. Son died leaving a later individual will. *Held,* two persons may join in single instrument as a will, which may be probated on the death of one as a will, and again probated on the death of the other as her will. Revocable by either at any time before death, at least as to either who has taken no benefit.

*McGuire* v. *McGuire, 74 Ky. 142:* Mutual wills, made upon consideration, enforced in favor of beneficiaries thereunder, although one of the parties subsequently made a will revoking the mutual will.

*Hill* v. *Harding (1891), 92 Ky. 76:* Joint will sustained with a *dictum* that it was revocable.

*Wyche* v. *Clapp (1875), 43 Tex. 548: Held,* agreements to make mutual wills valid. Effect of agreement not to render wills made in pursuance of them irrevocable, although such agreements may be enforced in equity against the estate of the defaulting party after his decease.

*Mullen* v. *Johnson (Ala., 1908), 47 So. Rep. 584:* Mutual wills between husband and wife do not raise a contractual relation, and in determining validity of one of such wills existence of the other is immaterial.

*Robertson* v. *Robertson (Miss., 1908), 47 So. Rep. 675:* Joint or mutual will of husband and wife could not be revoked by the widow as to the interest disposed of by the deceased husband.

*State Bank* v. *Bliss (1896), 67 Conn. 317; 35 A. R. 255:* Joint will creating common fund to pay debts of each and legacies to third parties not to be probated until both were dead, making each the residuary legatee of the other, was held to present an impracticable scheme, and to be without effect.

*In re Davis' Will, 120 N. C. 9; 26 S. E. Rep. 636:* Deals with the probate of a joint will after death of one maker.

*Best* v. *Grolapp (Neb.), 96 N. W. Rep. 641; affirmed, 99 N. W. Rep. 837,* and *Teska* v. *Dillbrenner (Neb.), 98 N. W. Rep. 57:* Joint will not revocable after performance by one.

*Buchanan* v. *Anderson (1905), 70 S. C. 454; 50 S. E. Rep. 12:* Joint will disposing of separate property may be revoked in the absence of a valuable consideration to support a contract to dispose as provided in joint will.

*Bower* v. *Daniel (1906), 198 Mo. 289; 95 S. W. Rep. 347:* Husband and wife, pursuant to mutual agreement, make a joint will whereby each left his or her property to the other for life, and at the death of the survivor all of the property of both to be distributed among their children. Wife dies and husband accepts benefits. He cannot thereafter revoke the will nor make voluntary conveyances contrary to its terms.

*Robinson* v. *Mandell, 3 Cliff. (U. S.) 169:* Where two persons agree to make mutual wills and both execute the agree-

ment, neither can revoke his will without giving notice to the other. The death of one makes the contract irrevocable as to the other. In such case equity enforces the agreement.

If the determination of the issue before me turned upon the question as to whether the paper dated June 20th, 1855, was a mutual will, and as such entitled to probate upon the death of Elizabeth the survivor, I should have to carefully analyze the authorities and extract therefrom that principle which I thought was founded upon the best reasoning, and determine the issue as thus advised; but, as I shall presently indicate, I do not think that the decision of this case should be put upon this point, and I do not therefore deem it proper for me in this case to decide that which I do not consider to be essential for its determination.

In case of specific performance in this state it has been held that the court should, to the extent to which it is possible to do so, settle doubtful questions of law affecting the title, and compel the vendee to take a title which it finds free from defect so far as doubtful questions of law are concerned. *Zelman* v. *Kaufherr* (*Vice-Chancellor Stevens, 1909*), *73 Atl. Rep. 1048.*

But where the validity of the title depends upon facts which are not of such a character as to be susceptible of proof at any and all times by those who may need to prove them for their protection, our courts held that title in such case should not be forced upon a vendee. *Fahy* v. *Cavanagh* (*Vice-Chancellor Pitney, 1900*), *59 N. J. Eq.* (*14 Dick.*) *278; Barger* v. *Gery* (*Vice-Chancellor Stevenson, 1902*), *64 N. J. Eq.* (*19 Dick.*) *263; Methodist Episcopal Church* v. *Roberson* (*Vice-Chancellor Bergen, 1904*), *68 N. J. Eq.* (*2 Robb.*) *431.*

In my view this case presents such a condition. I find that the state of this title does not turn upon the settlement of a doubtful question of law, but upon the settlement of a state of facts, and such facts are not susceptible of proof at any and all times by the persons for whose protection such proof is necessary, and, in the case at bar, there are no proofs concerning the circumstances upon which the validity or invalidity of the title depends.

It is undoubtedly the law that if two people, upon sufficient

consideration, agree to do something for the benefit of a third, such contract or agreement may be enforced as against the two contractors. It is equally well settled that, upon legal consideration, parties may agree to dispose of their property at the time of their deaths in certain specified ways or to certain specified people. The cases which hold that the courts will enforce the contract to make a certain testamentary disposition of property have already been given.

Without the necessity of considering or deciding whether the paper executed by Alexander Bisson and Elizabeth F. Bisson, his wife, on the 20th of June, 1855, was a will or not, it is perfectly clear that it expressed the understanding and agreement between those people at that time concerning the disposition of their property after their death.

If, therefore, it was founded upon sufficient consideration, a court of equity would sustain the same and decree its enforcement. Thus, it will be perceived, that it is immaterial (if the above statements of law are correct) whether the paper in question is a will, or is an instrument of proof concerning a contract or agreement. In either event, the persons to be benefited would have a cause of action respecting this property, and if they could prove that the parties (husband and wife) upon legal consideration had agreed that their respective properties should go in a certain way they could obtain an enforcement of that agreement.

It may be that during the lifetime of both Alexander and Elizabeth Bisson either could have rescinded this agreement—call it a will, or call it a contract, or an instrument of proof, tending to prove a contract. But I am clearly of opinion that whatever name should be properly used to characterize this paper, it proves, or tends to prove, an agreement between the parties signing it to dispose of their property in a certain way which a court will enforce if made upon legal consideration, and if it be true and proven that at the time the paper was executed, and at the time of the death of Alexander he was possessed of personal property or real estate which was taken over and used by Elizabeth, his wife, by virtue of the probate of this paper as his will, the agreement thus evidenced has sufficient legal consideration to support it, and the rights under it will be enforced.

If, for instance, Alexander was a man of means, and Elizabeth had the four lots which were in her name at the time of the making of the paper on the 20th of June, 1855, and they made this paper, which, as they said was to make a final settlement respecting their properties, and he died first, and she took under the terms of this paper which was probated as a will all of his personal property, and either used it (if it were held that under the terms of the probated will she was entitled to do so), or used it for life (if the narrower estate was held to be vested), I cannot believe it possible that any court would thereafter permit her, under these circumstances, to rescind or repudiate her part of the bargain.

As stated in a previous portion of this opinion, there is no proof before me as to the financial condition of Alexander Bisson either at the date of the making of the paper-writing of June 20th, 1855, or at the time of his death and when his will was probated in December of 1859. I do not decide, because I do not have to and do not desire to decide, anything excepting that which is necessary, what the law would be if proofs in this case disclosed that he had no personal property of any sort at the time of the making of the paper or at the time of his death. He undoubtedly had title vested in him to the two lots Nos. 195 and 204, and Elizabeth, the wife, under the probated will, undoubtedly would have the right to the enjoyment of the rents, issues and profits from those two lots for life. She attempted much more than this, because she included them in a conveyance made by her in 1864 to an intermediary who conveyed to her new husband Dallier.

It should be constantly borne in mind that the real parties in interest under the paper of June 20th, 1855, are not before the court, and are not bound by anything herein. Therefore, even if there were proof with respect to the situation, I doubt whether it would be proper for the court to make a finding upon these proofs in favor of the merchantability of the title and force it upon the defendant.

It might well be that proofs submitted between these strangers would show one state of facts, while proofs adduced in a suit in

which the beneficiaries designated in the paper of June 20th, 1855, were parties would show a very different state of facts.

However, I am not called upon to decide what should be done in a case in which such proofs were present. They are not present here.

Under the circumstances, therefore, it seems to me clear that this court should not force the defendant herein to accept this title. It is not shown to be merchantable in the case at bar. The paper of June 20th, 1855, if supported by legal consideration, evidences that which a court of equity will enforce. I purposely do not characterize the paper—that is, I· do not hold because it is not requisite that I should, whether this paper is a will probatable upon the death of both makers, or whether it is a contract which, upon proof of sufficient consideration, will be enforced, or whether it is an instrument of proof evidencing a contract. In either or any event, it is sufficient in this suit to affect the merchantability of the title in question. It is sufficient upon which to found a *bona fide* claim on behalf of the persons in whose favor it runs, which, if supported by proofs as to consideration, &c., would entitle them to relief.

Under these circumstances, I am entirely clear that a court of equity should not hold the title merchantable and force it upon the defendant.

In the brief of the complainant there was a heading, without argument or authority, that the complainant had good title to the premises by adverse possession. The proofs upon this point are so slight as to be practically negligible, and I took occasion to inquire of counsel for both parties whether they desired to press this contention further, and they both informed me that they did not. I cannot see that there are sufficient proofs in this case to make it worth while to discuss this question.

I will advise a decree in accordance with these views.