S. C. DAVIS, Appellant, v. LOIS G. EATON et al., Appellees.

No. 40353.

JANUARY 20, 1931.

*H. M. Logan* and *C. E. Dean,* for appellant.

*Genung & Genung* and *Spence & Beard,* for appellees.

MORLING, J.—Plaintiff and defendants Eaton made a contract dated January 8, 1929, for the exchange of the land in controversy in Ringgold County, owned by plaintiff, for land in Wyoming, owned by defendants Eaton. The Ringgold County land was to be taken by the Eatons subject to a first mortgage of $10,000 and a second mortgage of $4,600. By the contract "first party [plaintiff] guarantees renewal of both mortgages on his land, at no higher than present rate, for five years." Possession was to be given on or before March 1, 1929, when the deeds were to be delivered, and plaintiff was to pay $1,600 to defendants in cash. Defendants took possession of the Ringgold County land in February. Plaintiff received the lease to the Wyoming land. About that time, plaintiff sold to defendants personal property on the Ringgold County land to the amount of $914.

Plaintiff does not plead or prove that he has performed the contract with respect to the guaranty renewal of the second mortgage for $4,600. He pleads that defendants, after the execution of the written contract, orally agreed that, of the $1,600 to be paid by plaintiff, $600 should be applied on the second mortgage, reducing the second mortgage to be renewed to $4,000. He assumed to obtain from the holder of the second mortgage agreement for renewal for $4,000, and claims that he offered to defendants for execution papers for renewal accordingly. Defendants, however, say they refused to renew for $4,000. The weight of the evidence is that the defendants did, before March 1, 1929, say to plaintiff that they would permit the application on the second mortgage of $600 of the $1,600 to be paid by plaintiff, and accept renewal for $4,000. On March 5, 1929, defendants, by letter to plaintiff, notified plaintiff that they had been advised by their lawyer to stand strictly by the contract. The letter said further: "I wish you could arrange some way to get them to renew the whole amount as I don't see how I can get along without the $600." By letter dated March 11, 1929, defendants notified plaintiff that the terms of the contract in regard to the renewal of the second mortgage had not been met, and they were "going to call the deal off." On March 18, 1929,

defendants wrote plaintiff, "The deal is off." Plaintiff says that the papers for the renewal of the second mortgage for $4,000 had been ready for signature since March 11, 1929; that no $4,600 note and mortgage was ever presented to the Eatons for signature. The evidence fails to show any agreement binding on defendants to so modify the written agreement that $600 of the cash payment to be made by plaintiff should be paid on the second mortgage and the second mortgage renewed for $4,000. At most, plaintiff's evidence would show a mere naked promise to make such change,—a promise without consideration, and a promise that was retracted, as, under the evidence in this case, defendants might do. Furthermore, while defendant testifies that the holder of the second mortgage agreed to a renewal for $4,000, there was no proof in the court below, further than plaintiff's testimony, as to who was the holder of the second mortgage, or that the holder had agreed to renew. Plaintiff testified, in effect, that the Iowa State Savings Bank was the holder of the second mortgage; that Mr. Royce was its president; that Mr. Royce agreed to and prepared papers for renewal for $4,000. But in this suit for specific performance, the court cannot, on such testimony, hold that the Iowa State Savings Bank was legally and of record the owner of the second mortgage and the note secured by it, or that it had authority to make the renewal, or was legally bound to grant such renewal. The court cannot, on this record, decree that defendants shall execute their note for $4,000 for 5 years to the Iowa State Savings Bank. The terms of the existing second mortgage and note and those of the proposed renewal are not before the court, and the court cannot say that it is equitable to compel the defendants to execute papers the terms of which are not disclosed, and the validity of which and the operation of which to take up the existing second mortgage are wholly conjectural.

When the alleged promise was made, the plaintiff had no authority from the holder of the mortgage to agree to an acceptance of $600 or to a renewal for $4,000. The holder was not bound. There was no enforcible obligation on the part of plaintiff to change the contract, no mutuality, and no consideration for the alleged modification. The parties did not act upon the alleged modification, and did not go forward upon the strength

of it. *Tomlinson v. Smith,* 2 Iowa 39; *Jones v. Alley,* 4 G. Greene 181.

Furthermore, the evidence satisfactorily shows that plaintiff represented to defendants that the land would grow sweet clover and alfalfa without liming; ''that all you had to do was to plant it;'' that the representation was untrue. The evidence shows that these representations were made before the contract was signed, and were relied on; that defendants were justified in relying upon them; that sweet clover and alfalfa would not grow without lime; that liming would be expensive. While the representations were made in the course of an inspection of the land by defendants, the circumstances of the examination were such that defendants were justified in relying upon plaintiff's statements. The court below found that the mortgage could not be renewed upon the terms set forth in the contract, and that plaintiff had failed to procure renewal for the same amount; that ''plaintiff, with full knowledge that defendants were acquiring the land in question for a stock farm, represented that alfalfa could be grown upon it without the use of lime, when, in truth and in fact, such could not be done.'' These findings are sustained by the evidence.

Defendants, in answer, asked for rescission. Rescission was not granted. Plaintiff argues that, if there is no rescission, then the only possible alternative is to require performance. The law is otherwise. Rescission is not granted as matter of course on denial of specific performance. Specific performance may be denied though a case for rescission is not made. *Dunlop v. Wever,* 209 Iowa 590; *Bates v. Smith,* 48 S. D. 602 (205 N. W. 661); 36 Cyc. 758; 1 Black on Rescission and Cancellation 16. Plaintiff, through the Glenwood State Bank, on February 26, 1929, made statement to defendants showing:

''Amount due you $1,600. Amount due you for taxes paid $82.44. Amount due you to pay 11 mo. 15 days interest on first mortgage $275. (Footing) $1,957.44. Less for stock bought by you $914. Amount of check left by Davis $1,042.64.''

Plaintiff left with the bank his check to the order of defendant for this amount, $1042.64. Defendants, in their letter of March 11, 1929, to plaintiff, proposed to keep the personal property and to rent the land from plaintiff on terms therein

stated. Plaintiff complains that the parties cannot now be placed *in statu quo,* and asks, "What can be provided as to the $1,600 of cash received and the value of the possession and use of the Iowa lands?" The purchase of the personal property was no part of the stipulation of the contract here sued upon. Plaintiff chose his own remedy and method of procedure, and took his chance on his right to that remedy. He did not ask for rescission. Defendants are not complaining that rescission was not granted. Under the circumstances, and in harmony with precedents, the decree should be without prejudice to the plaintiff to pursue such other remedies as may be available to him. The decree appealed from shall operate merely as a denial of the particular relief asked by plaintiff,—namely, specific performance,—without prejudice to his right to resort to other remedies. *Findley v. Koch,* 126 Iowa 131; *Newman v. French,* 138 Iowa 482; *Miller Saw-Trimmer Co. v. Cheshire,* 172 Wis. 278 (178 N. W. 855). The decree will be modified accordingly, and as so modified, affirmed.—*Affirmed.*

FAVILLE, C. J., and STEVENS, DE GRAFF, ALBERT, and WAGNER, JJ., concur.