KENNETH E. SLACK et ux., plaintiffs-appellants, v. EDWARD R. MULLENIX and MARJORY MULLENIX, appellees; MABEL B. MURPHY, FREDERICK JERRY MURPHY and GLADYS JOAN GRIFFITH, defendants-appellants; DES MOINES BUILDING-LOAN & SAVINGS ASSOCIATION, intervenor.

No. 48491.

(Reported in 66 N.W.2d 99)

September 21, 1954.

Thaddeus C. Jones and Tesdell, Tesdell & Miller, all of Des Moines, for plaintiffs-appellants.

Eskil C. Carlson, of Des Moines, for Mabel B. Murphy and Gladys Joan Griffith, defendants-appellants.

Frederick Royal, of Des Moines, for Frederick Jerry Murphy, defendant-appellant.

Richard A. Strickler, of Des Moines, for Edward R. Mullenix and Marjory Mullenix, defendants-appellees.

E. S. Tesdell, Jr., of Des Moines, for intervenor.

MULRONEY, J.—Plaintiffs' petition states two causes of action. One is against Edward R. and Marjory Mullenix, the vendees in a contract for the sale of realty, for specific performance of the contract, and the other is against the rest of the defendants to quiet title to the realty described in the contract. The specific performance action set forth the contract for the sale of plaintiffs' six lots in Des Moines for $4250, payable $1000 down and $40 a month. It alleged the vendees made the down payment and took possession but refused to carry out the further obligations of the contract, claiming plaintiffs' title to the lots was not merchantable by reason of what we will call the Murphy judgment.

The quieting-title portion of the petition described the Murphy judgment which was a Polk County judgment and decree entered in a divorce action between Mabel and Raymond Murphy wherein Mabel was given custody of their two children and Raymond ordered to pay into the office of the clerk for child support the sum of $16.15 weekly until each child should attain majority or marry. The petition in the instant case alleged that, after the entry of the above judgment and decree, Raymond Murphy and his second wife, Helen, became the owners of the

lots and a few weeks later conveyed them to James and Winifred Kelley who are grantors in plaintiffs' chain of title; the records showing that at the time of this transfer to the Kelleys all of the child-support payments then due under the divorce decree had been paid.

The prayer of the petition was, first, for a decree quieting title as against any lien of the Murphy judgment, or any claim of Mabel Murphy or her two children, all named as defendants, and second, for a decree requiring the vendees, Edward and Marjory Mullenix, to specifically perform their contract. The petition recognized the superior lien of a mortgage plaintiffs had placed on the lots in favor of the Des Moines Building-Loan and Savings Association, an intervenor in the action.

The vendees answered admitting they had refused to accept the title because of the Murphy judgment, which they alleged rendered the title defective, and the other defendants answered claiming the amount due and unpaid under the divorce decree after the conveyance to the Kelleys (some $4000) was a paramount lien against the realty. Some issue developed in the pleadings between Mabel Murphy and her children as to who was entitled to the child-support money.

The fact allegations in the pleadings were all established by stipulation, so, at the conclusion of the trial, one issue the court had for decision was whether the Murphy judgment constituted a lien against the realty for future unpaid installments. It will be remembered all of the installments due at the time of transfer to the Kelleys were paid. The trial court held in favor of the plaintiffs on this issue and quieted plaintiffs'· title as against any lien of the Murphy judgment or any claim of Mabel Murphy or her children. The latter defendants appeal from the court's decision on this issue.

I. We agree with the holding of the trial court quieting title as against any possible lien of the Murphy judgment. Section 624.23, Code, 1954, provides judgments of the district court are liens against the real estate owned by defendant. At the time of the conveyance by Raymond and Helen Murphy this judgment stood as a judgment calling for future periodic installments for an indefinite period of time. There was nothing

then due under the judgment and no way by which the amount that would be due could be definitely determined. The uncertainty of amount is apparent because of the possibility of the death or remarriage of the parties, the possibility of modification, and the possibility of marriage of the children before their majority.

▪▪▪▪ The general rule as stated in 49 C. J. S., Judgments, section 458, is: "As a general rule, in order to create a judgment lien, there must be a judgment which is final, valid, and subsisting, rendered by a duly constituted court for the payment of a definite and certain amount of money which may be collected by execution on property of the judgment debtor."

As supporting this general rule where the question of the creation of liens for future periodic installments in divorce actions is involved, see Yager v. Yager, 7 Cal.2d 213, 60 P.2d 422, 106 A. L. R. 664; Tivas v. Tivas, 142 Fla. 703, 196 So. 175; Scott v. Scott, 80 Kan. 489, 103 P. 1005, 25 L. R. A., N.S., 132, 133 Am. St. Rep. 217, 18 Ann. Cas. 564; Leifert v. Wolfer, 74 N. D. 746, 24 N.W. 690, 169 A. L. R. 633; Mansfield v. Hill, 56 Ore. 400, 107 P. 471, 108 P. 1007; Bashore v. Thurman, 152 Okla. 1, 3 P.2d 712, 79 A. L. R. 249; notes, 79 A. L. R., page 253, and 169 A. L. R., page 641.

Illustrative of the holdings in the authorities cited above is this quotation from Mansfield v. Hill, supra, page 408 of 56 Ore., page 474 of 107 P.: "The provision of the divorce decree for future monthly payments by defendant until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a specific sum which may become a lien upon his property. The very idea of a lien upon property involves certainty as to the amount, so that persons dealing with defendant, as well as defendant himself, may know how much is involved; otherwise he would be precluded from dealing with his property at all, since it would be impossible for him to pay the lien. Freeman on Judgments, §340, says: 'There can be no lien except upon such judgments as the plaintiff is entitled to satisfy by levy upon the lands of the debtor. * * * The judgment must be for a specified sum.' To the same effect is Black on Judgments, §407."

■■ We do not find where the issue here involved has ever been directly decided by this court. In Davis v. Davis, 228 Iowa 764, 773, 292 N.W. 804, 808, there is a statement in the opinion that "the fact that judgment was entered for the [alimony and child support] awards would in itself make them liens upon any real estate owned by [the husband]." The statement is dictum for there the divorce decree specifically made the awards liens against the husband's realty. We have, in many cases, announced our adherence to the general rule that the court may, in divorce actions, make the alimony and support-money awards, liens against the husband's realty. See Luedecke v. Luedecke, 195 Iowa 507, 192 N.W. 515, and cases there cited. But the specific question as to whether an automatic lien would attach for future installments of support money has not been decided. Whittier v. Whittier, 237 Iowa 655, 23 N.W.2d 435, cited by appellants is not in point for the case did not involve the lien statute and only accrued installments were involved. We hold an installment alimony or support-money judgment does not constitute an automatic lien upon real estate for future unpaid installments and affirm the trial court's quieting-title decree.

II. The trial court's quieting-title decree caused the court to decree the superiority of the lien of intervenor's mortgage which the vendors and vendees did not question. So it follows our affirmance of the quieting-title decree means an affirmance in favor of the superiority of the intervenor's mortgage lien.

III. In the trial court's first conclusion of law he decided the issue between Mabel Murphy and her child, as to the right to support money under the divorce decree, in favor of the mother, saying the property right in the judgment vested in the parent. But the court went on to state that in view of his holding that there was no lien against the realty for any unpaid installments of support money it was "unnecessary to make any further finding or order in connection with the claim of the minor." But the court did not follow this course for in the final decree in the case it was ordered adjudged and decreed that the mother was entitled to the money due under the divorce decree as against the claims of the children.

The children perfected an appeal from this portion of the

decree but only one of them, Frederick, appearing by a guardian ad litem, filed a brief. In this brief the guardian ad litem starts out by saying he has made full and diligent search of the authorities but has been unable to discover any decisions directly in point on the asserted proposition that child-support payments are the property of the child.

It would seem a dispute between rival claimants to a judgment lien should not be decided when they both fail to establish the existence of a judgment lien. However, the trial court decided the issue and incorporated his decision in the decree. We feel the trial court was right in his conclusions of law that the mother would be entitled to the support-money award over the child. As some authority see Peck v. Peck, 207 Iowa 1008, 222 N.W. 534, and Watts v. Watts, 240 Iowa 384, 36 N.W.2d 347. The mother answers her child's brief in a short division citing no authority but telling us a decision of the issue would be "desirable." Without further discussion we will hold in favor of the mother and affirm the trial court's holding that the mother was entitled to the child-support award as against the claims of the children.

IV. We come now to the specific performance action. In the same conclusions of law, where the court found plaintiffs were entitled to the quieting-title decree, the court found the plaintiffs were not entitled to a decree of specific performance and the plaintiffs appeal from the decree entered pursuant to this finding. The court went on to hold subsequent hearings and make various orders with respect to a return of a portion of the $1000 down payment and a rent allowance against the down payment for the vendees' occupancy. Because we are of the opinion the trial court should have granted specific performance we need not go into the correctness of the subsequent orders— save to observe they seem to be predicated on the thought that the denial of specific performance put an end to the contract. That such is not the law see 81 C. J. S., Specific Performance, section 167b; Davis v. Eaton, 211 Iowa 837, 234 N.W. 252.

The vendees have filed no brief in this court and the only reason advanced for denying the decree of specific performance is contained in the trial court's conclusions of law: that plain-

tiffs failed to show a good and merchantable title by reason of the Murphy judgment. A short answer to this argument is that the trial court made the title good and merchantable as against the Murphy judgment in the same conclusions of law and the same decree where specific performance was being refused.

Time was not made the essence of this contract so any defect in the title which could be cured would not necessarily be fatal to the vendors' action for specific performance. In 81 C. J. S., Specific Performance, section 151, the general rule is stated to be that disputed questions of title should be settled in specific performance actions and where all parties are before the court the plaintiff's rights can be "established and enforced."

In Deseumeur v. Rondel, 76 N. J. Eq. 394, 402, 74 A. 703, 707, it is stated: "* * * the court should [in a specific performance action], to the extent to which it is possible to do so, settle doubtful questions of law affecting the title, and compel the vendee to take a title which it finds free from defect so far as doubtful questions of law are concerned."

It can be conceded there was some doubt about whether the Murphy judgment would be a lien as to future payments that would be due. There is some authority in other jurisdictions in favor of the lien for future installment payments. But the court cleared up the doubt by his ruling in the quieting-title action. If plaintiffs had quieted their title in a separate action and then brought action for specific performance all would agree they would have prevailed. There is no difference at all when the two actions are combined, except that possibly they could have been separated upon appropriate motion or by action of the trial court. (Rule 27, R. C. P.)

The rule is that where the defect in the vendor's title can be cured before time for the decree in his specific performance action, the court will allow the vendor to do what is necessary to cure the title and then order the decree of specific performance. This seems to be a rule that has universal support.

In an early leading case on the subject, Hepburn v. Auld, 5 Cranch (U. S.) 262, 277, 3 L. Ed. 96, 100, the United States Supreme Court regarded the granting of the decree, where

the defect is cured, as general practice, the opinion stating: "* * * this case ought to be governed by those general principles which regulate the conduct of a court of chancery in decreeing a specific performance, if the defect of title, which existed at the time of contract, be cured before the decree."

In the note in 22 A. L. R.2d, page 561, many cases are cited to support this rule which the note writer draws from the authorities: "If time is not of the essence of the contract and it appears at trial that the plaintiff will be able to make good title when the decree is entered, the court will order the decree [of specific performance], or will continue the case for a reasonable time to allow the plaintiff to do what is necessary to perfect the record title."

In Maryland Constr. Co. v. Kuper, 90 Md. 529, 543, 45 A. 197, 199, it was stated the authorities are ample to establish the rule that the vendor will have until time for decree of specific performance to remove a defect when time is not of the essence of the contract, and then the court went on to state the reason behind the rule, as follows: "If this were not so, an owner of land who has incumbrances upon it might pay them off for the purpose of giving the purchaser a clear title and then not be able to enforce the contract of purchase, or he might be subjected to heavy costs in order to have his title cleared and then not be able to require the purchaser to perform his part of the contract."

Applying the above rule to this case means plaintiffs are entitled to the specific performance decree. After the quieting-title decree the action stood as a specific performance action by vendors against vendees who could not then complain that the title they were being forced to take was not good and merchantable. The land was no longer exposed to any claims under the Murphy judgment. If the law is settled favorably to vendors' title, before time for the specific performance decree, the reasons why the vendees should not be compelled to perform their contractual obligations vanish.

We hold plaintiffs were entitled to specific performance and we reverse for the entry of such decree; the decree to contain the other portions of the trial court's decree specifically affirmed in the prior divisions of this opinion.

 It would be somewhat easier to assess the costs in this litigation if the two causes of action had been separately docketed and tried in the trial court. However, the trial court in a supplementary decree made a division of costs approximately one half against the plaintiffs and one half against the defendants Mabel Murphy, Frederick Jerry Murphy, and Gladys Joan Griffith; the costs to include a $50 attorney fee to be paid to Frederick Royal, the guardian ad litem for Jerry Murphy. The court did assess the costs of one hearing on the issue of rental value, one half to the plaintiffs and one half to Edward and Marjory Mullenix. The decree directs the clerk to separate the costs and assess them against the respective parties. No one complains about this apportionment of the costs by the trial court but of course the plaintiffs, being now successful in both suits, would be entitled to be absolved from the payment of any costs. There is authority that the successful plaintiff in specific performance can be charged with all or a part of the costs where the objections to his title are reasonable and it is necessary to resort to judicial proceedings to set at rest questions concerning the title. 81 C. J. S., Specific Performance, section 172b(1); New Orleans Auction Exchange v. Vincent, 168 La. 802, 123 So. 331. We are disposed to let the apportionment of costs made by the trial court for the costs in the district court stand. However, plaintiffs will be relieved of the payment of all costs of the appeal, and the costs in this court will be assessed one half to vendee defendants Edward and Marjory Mullenix and one half to the defendants in the quieting-title action, Mabel Murphy, Frederick Jerry Murphy and Gladys Joan Griffith.—Affirmed in part and reversed in part.

GARFIELD, C. J., and BLISS, OLIVER, SMITH, HAYS, and LARSON, JJ., concur.

THOMPSON and WENNERSTRUM, JJ., concur except as to Division III, in which they concur in result.