**LINDSEY**

v.

**UNITED STATES et al.**

**Civ. A. No. 2242.**

United States District Court
E. D. Tennessee, N. D.

May 25, 1954.

Wm. P. O'Neil, Jennings, O'Neil & Jarvis, John J. Duncan, Knoxville, Tenn., for plaintiff.

John C. Crawford, Jr., U. S. Dist. Atty., T. M. Blackburn, Jr., Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

The sole issue for determination in this case is whether there was a change of beneficiary in the $10,000 National Service Life Insurance granted to the deceased veteran, Robert Leon Lindsey, under N–20 812 816, in which Reeta Cordia Lindsey, mother of the veteran, and Lily May Marberry, friend of the veteran, were named as beneficiaries equally, or to the survivor.

James M. Lindsey, father of the veteran, and Reeta Cordia Lindsey, mother, claim the veteran changed the original beneficiaries and that as of the day of death of the veteran James M. Lindsey was the designated principal beneficiary of the insurance and Reeta Cordia Lindsey the contingent beneficiary.

The Administrator of Veterans' Affairs ruled that a change of beneficiary

was not made by the veteran and therefore denied the claim of James M. Lindsey for the entire amount of the insurance, and allowed the claim of Lily May Marberry and Reeta Cordia Lindsey for equal shares in the proceeds of the insurance.

James M. Lindsey sued the Government under the National Service Life Insurance Act, Title 38 U.S.C.A. § 817, for the entire proceeds of the policy. The Government by answer admitted liability under the policy but denied liability to James M. Lindsey. The Government denied that there was any change of beneficiary. The Government impleaded Reeta Cordia Lindsey and Lily May Marberry (now Lily May Watson), the persons originally named, as beneficiaries in the policy and stated that it was willing to pay to the person, or persons, entitled to the benefits thereunder.

Lily May Watson filed a formal answer to the Government's counterclaim in which she claimed one-half, or $5,000, of the proceeds of the policy. At a later date she filed a counterclaim against James M. Lindsey, the Government and Reeta Cordia Lindsey in which she asked affirmative relief against them in the amount of $5,000.

The veteran first enlisted in the Navy on August 25, 1948, and re-enlisted on August 24, 1951. He died in the service as a result of injuries sustained in a motorcycle accident on September 30, 1951, while stationed at Camp Pendleton in Oceanside, California. At the time he first entered the service he was regularly going with Lily May Watson (who, for convenience, will be referred to as Miss Marberry). He wrote to her practically every day when he first entered the service. She states that they never were engaged and that he never asked her to marry him. He told her in one of his letters that he was going to, or had, named her his beneficiary in the Government insurance. He never told her that he had eliminated her from the policy as beneficiary. Miss Marberry married in 1949. At the time of her engagement she notified the veteran that she was not going to write him any more and returned his picture to him. She asked that he return her picture and her letters but he would not return them. He never wrote her after she became engaged. She saw him on the streets in Knoxville several times when he was home on furloughs and spoke to him but never had anything to do with him. She advised him of their engagement in March of 1949. She did not receive any notice of being a beneficiary in the policy until December, 1951.

A telegram was sent from the Commanding Officer, Naval Hospital, Camp Pendleton, California, to the Secretary of the Navy on October 10, 1951, announcing the death of the veteran and stating that a telegram would follow concerning the date premium was paid on the National Service Life Insurance and the beneficiary of this insurance. The follow-up telegram was sent on October 20, 1951, in which it was stated that the father of the veteran was the beneficiary of the insurance. The follow-up telegram was sent by Mrs. E. Caroline Hawkins, Supervisory Clerk, U. S. Naval Hospital, Camp Pendleton, California. She was a Civilian Supervisor of Patient Personnel and Record Section which embodies the preparation and maintenance of records pertaining to patients in Camp Pendleton.

Mrs. Lindsey testified that a letter from her son, received about May 15, 1950, stated that he had changed all of his insurance to his father; also that notice of the change came to Mr. Lindsey about June 1, 1950. This letter was not filed as an exhibit and is not in the record. She also testified that the notice of the change of beneficiary was turned over to Mr. Carroll of the Veterans' Administration about October 15, 1951, but that a receipt for the notice was not given to her or to her husband. Mr. Lindsey corroborated the testimony of his wife to the effect that he received a letter from his son stating that he had been substituted as a beneficiary in the policy in question and that he received the notice of the change in June, 1950.

Mr. and Mrs. Lindsey also testified that while their son was home on furlough in 1950, he told them that he had changed his insurance so as to name Mr. Lindsey the sole principal beneficiary. They likewise testified that when their son was home on furlough in July, 1951, he stated that if anything happened to him his father would get the entire proceeds of the policy.

The veteran had worked for Mr. A. L. Christenberry at the latter's grocery store in Knoxville during various periods before he entered Naval service. On one of his furloughs, he told Mr. Christenberry that he had named his mother and Miss Marberry as beneficiaries of his Government insurance. Mr. Christenberry advised him that all of his insurance should go to his parents, but that if he got married he could change his insurance so as to make his wife the beneficiary. On a later occasion, sometime in 1951, he told Mr. Christenberry that he had changed his Government insurance so as to make his parents the beneficiaries.

J. D. Branch married a sister of the veteran's mother. Mr. Branch testified that he heard the veteran tell his father on a Sunday in July, 1951, while sitting in a swing on the front porch beside his father, that he had changed his insurance by naming his father as the sole beneficiary. Mr. Branch's testimony was at variance with an affidavit which he had given to the Red Cross on July 2, 1952, in which he stated in substance in the affidavit the veteran's mother and father had been substituted as beneficiaries and that Miss Marberry had been left out as a beneficiary.

The veteran had been a classmate and a friend of Mrs. Sarah Iddings and her husband. Mrs. Iddings testified that in the early part of June, 1950, the veteran told her he had changed his insurance, but she did not remember exactly what he said in regard to the change. She also testified that he talked with her again about his insurance on the 2nd or 3rd of July, 1951, when they were planning a trip to Gatlinburg. Miss Ruther-

ford, current sweetheart of the veteran, was to accompany them on the Gatlinburg trip. He was having trouble with Miss Rutherford at that time and he stated that he was glad he had not named her as his beneficiary in his insurance because he would have to go through the trouble of getting his insurance changed again. At that time he stated he had changed his insurance so as to eliminate Miss Marberry as a beneficiary, as he felt she had jilted him. Mrs. Iddings also gave an affidavit to the Red Cross dated June 24, 1952, in which she stated that the veteran told her he had changed his beneficiary so as to make his insurance to his mother. Her explanation for the discrepancy in her testimony and affidavit was that Mrs. Shipley of the Red Cross wrote up her statement and passed it to her while she was hanging out some clothes, the inference being that the discrepancy was due to an inadvertence of Mrs. Shipley in writing up the statement.

Mr. and Mrs. Lindsey testified that they received a card from the Veterans' Administration in Washington, D. C., acknowledging receipt of the certificate, or notice of change of beneficiary, and that this card was shown to Mrs. Shipley, representative of the Red Cross, before it was turned over to Mr. Carroll along with the certificate, or notice of the change of beneficiary. Mrs. Shipley was called as a witness at the instance of the Court and stated that she had no recollection of seeing any card, letter or any other communication from the Veterans' Administration in Washington, D. C., acknowledging receipt of certificate, or notice of change of beneficiary, from Mr. Lindsey.

As heretofore observed, the telegram of October 20, 1951, sent by Mrs. E. Caroline Hawkins, stated that the insured's beneficiary was his father. In response to subsequent interrogatories, she stated as her recollection that she got the information for the telegram from the serviceman's record book.

A careful examination of so much of the service record of the veteran

as has been put in evidence fails to support or corroborate the beneficiary statement of Mrs. Hawkins. The service record, of course, would be the best evidence on the subject, if there were any conflict between the service record and the testimony of Mrs. Hawkins. However, the photostatic copies, which purport to comprise the service record, contain no information on the subject of insurance. The inference to be drawn is, that the record submitted is incomplete. The conflict, therefore, is not between the statements of Mrs. Hawkins and what is in the record, but between what *was* in the record when she examined it and what it now contains. Opposed to her testimony is a mere vacuum. The Court's experience with other cases involving veteran's insurance policies supports his view that a part of the service record in this case has been lost.

The veteran wrote a letter to his mother and father dated April 20, 1948, while he was stationed at Guam. The pertinent part of this letter is as follows: "Dear Mom & Dad: * * * I draw $18 a month now, the rest is $75 bonds, $15 insurance. Mom, one insurance policy was there when I was home on boot leave. I'm glad you got the other one. If anything happens to me, you will get all the money." It is to be noted that the veteran stated in this letter to his mother and father that if anything happened to him "you, will get all the money." The letter is addressed to both the mother and the father. In the same paragraph he mentions commercial insurance. Of this his father was the sole beneficiary. The conclusion is that the word *"you"* includes both the mother and the father, or the father only.

All of the testimony in the record shows that the veteran intended to change the beneficiaries in his policy, so that the proceeds would go to his father, or to his mother and father. It was natural for him to believe that if he named his father as beneficiary, the benefits in actuality would include his mother; or that, if left to his mother, the benefits would include his father, also.

There was, indeed, a radical change in the situation between that which existed at the time the veteran designated his then sweetheart, Miss Marberry, on September 3, 1948, as an equal beneficiary with his mother in his Government insurance, and that which existed on the date of the veteran's death on September 30, 1951. This change gave the veteran every reason to make the change of beneficiary in his insurance. The veteran was notified by Miss Marberry in March, 1949, that she was engaged to and expected to marry someone else. She returned his letters and photograph and asked him to return hers. Evidence that he eliminated her as a beneficiary is in complete harmony with what a man of normal instincts would have done in the changed circumstances.

The testimony of five of the seven witnesses in the case was to the effect that the veteran carried out his intention to make the change of beneficiary. The other two witnesses, Miss Marberry and Mrs. Shipley, did not testify as to the change of beneficiary; they simply were without information. The result is, that all of the affirmative testimony in the record is to the effect that there was a change in the beneficiary.

■ The general rule, as announced by a number of courts is, that the burden is upon the party which asserts there was a change of beneficiary to establish by a preponderance of the evidence that, (1) it was the intention of the veteran to change the beneficiary, and (2) that the veteran took steps to effectuate his intention. Kaschefsky v. Kaschefsky, 6 Cir., 110 F.2d 836; Roberts v. United States, 4 Cir., 157 F.2d 906; Bradley v. United States, 10 Cir., 143 F.2d 573.

■ The plaintiff has carried the burden of proof by showing not only that the insured intended to make a change but actually effected the change, the change being in favor of his father, that is, the plaintiff, for the entire sum of $10,000, the contingent beneficiary being the mother of the insured.

Let an order be prepared designating plaintiff, James M. Lindsey, as principal beneficiary for the entire $10,000, and his wife, Reeta Cordia Lindsey, as the contingent beneficiary for the same.