**UNITED STATES of America**

v.

**Clara M. CRUZE, Emily M. Dockery, a/k/a Madalyn Smith Dockery.**

**Civ. A. No. 7008.**

United States District Court,
E. D. Tennessee, N. D.

Nov. 20, 1970.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for plaintiff.

W. Conway Garlington, Wilson S. Ritchie, Knoxville, Tenn., for Mrs. Emily M. Dockery.

Frank L. Flynn, Sr., Flynn & Flynn, Knoxville, Tenn., for Mrs. Clara M. Cruze Dockery.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This suit is an interpleader filed by the Government, the stakeholder, to determine the proper beneficiary of a National Service (GI) Life Insurance Policy. 38 U.S.C. § 784.

On January 17, 1949, the deceased serviceman, Earl W. Dockery, contracted with the Government for a $10,000.00 life insurance policy. He designated his mother in her maiden name, Clara M. Cruze, sometimes called the mother or Clara Dockery, as beneficiary. He was subsequently discharged from the service and married Lily Green in 1954. When that marriage was ended by divorce in 1958, Earl was awarded custody of their two sons, and he and his sons resided with his mother. The boys, age thirteen (7th grade) and fifteen (9th grade) at trial, have continued to reside with their grandmother, age 63, who is now widowed. In 1964, Earl became acquainted with a woman whom he subsequently married June 8, 1967 when both were thirty-eight years of age. This woman, Emily M. Dockery, sometimes called the widow or Madalyn Dockery, claims the policy proceeds on the strength of the decedent's execution of forms designating her as beneficiary thirteen days before his death. Clara Dockery claims that the forms were fraudulently executed or resulted from undue influence and, therefore, ineffective to change the beneficiary.

As a result of his employment, Earl Dockery developed silicosis. According to a co-worker, he had not been able to perform his normal duties for some six to eight weeks before he stopped working on October 30, 1967. He entered the hospital on November 13, 1967, and after testing was scheduled for major surgery on November 27, 1967. He did not recover from that operation, remaining under intensive care conditions until he succumbed December 8, 1967.

Madalyn Dockery testified about the general circumstances, including the execution of the forms designating her the beneficiary. Several months before the marriage she and the decedent were visiting in the home of the Murphys. Mrs. Murphy had been an acquaintance and close friend of Madalyn for over twenty years and at an early date in the courtship, the decedent was introduced to Mr. and Mrs. Murphy. They had socialized together frequently. At this particular time, Mrs. Murphy was berating her husband for his delay in designating her as the beneficiary of his insurance. A discussion ensued about the problems that arose when an acquaintance had neglected to change the beneficiary when he was married for a second time. Sometime during this conversation, Earl Dockery stated that he had two policies, one for $1,000.00 with Kentucky Central Life, and another with the Government for $10,000.00, and that his mother was beneficiary of both. The discussion concluded with the general consensus that a husband should designate his wife as beneficiary. There was a similar conversation between these same individuals at a date after the marriage with the same conclusion.

The Murphys visited the decedent twice after he entered the hospital. According to their testimony, insurance was discussed and Earl indicated that he intended to make Madalyn the beneficiary. When he secured the proper forms he wanted the Murphys to witness the execution. His wife got the proper forms for the Kentucky Central policy. Change of beneficiary forms for the GI insurance were mailed to Earl at the address where he resided with his wife. Madalyn brought the letter containing the forms unopened to him in the hospital.

The Murphys' second visit occurred after the forms were in Earl Dockery's possession during evening visiting hours on Saturday, November 25, 1967. Mrs. Murphy testified that they were at the

hospital for about thirty minutes. Mr. Murphy, in effect, stated that it was taken for granted that the change of beneficiary would be made during this visit. After he and his wife had arrived and visited with Earl, the forms were signed, there was some conversation and they left the hospital.

The Murphys explained the execution of the form, Exhibit 1. Line 1A "Name of Insured and Mailing Address" was completed by an unidentified person. This was the only information on the form when Earl Dockery signed on Line 8. Mr. Murphy put his signature and address in Lines 11 and 12. Mrs. Murphy added her signature and address in Lines 11 and 12. Madalyn was present. Mrs. Murphy observed that without designating a principal beneficiary in Line 6 the form would not change the beneficiary. She inserted Madalyn's name in Line 6. From the exhibit it is observed that Line 2 "file no.", Line 3 "Policy No. on which Change is Desired," Line 4 "Service No.", and Line 5 "Social Security No." were not completed. The Kentucky Central beneficiary change was also made at this time. When all the forms were complete, Earl instructed Madalyn to properly deliver them, which she did after his death. There was no conversation about Earl's provisions for his sons. The Murphys and Madalyn testified that Earl Dockery was alert, aware of the consequences of his actions, and not under the influence of any drugs.

Clara Dockery stated that her son had requested that the Government deliver the policy to her and that she had retained possession of it until the trial. She assisted her son in making premium payments, and in 1965 and 1966 the last two years that premiums were required, she paid the entire premium. When on occasion her son had asked to borrow money, he assured her that the policy would cover the loans. He was close to his sons and intended that she apply the proceeds to the use and benefit of the boys. If she is awarded these proceeds, she asks the Court to establish a trust with them for the boys.

Clara Dockery testified to this version of the events immediately before her son's scheduled surgery on Monday. On Friday her son requested her to bring the Kentucky Central policy to the hospital. When she delivered the policy to Earl he told her that he intended to designate Madalyn beneficiary on the Kentucky Central policy because she had been pressuring him to make the change. He stated that he had no intention of changing the GI policy. On Saturday, Clara Dockery was with her son at the hospital from 10:00 A.M. until 10:00 P.M., except for brief periods not exceeding thirty minutes when she ate or refreshed herself. During the period from 7:00 P.M. until 8:30 P.M., when the forms were allegedly executed, she was with her son. She did not see the Murphys or Madalyn at the hospital that day nor were they in her son's room at that time. She had been informed that Madalyn was outside the hospital in a car at an earlier time during the day. On Sunday, her son told her again that he had no plan to replace her as the beneficiary of his GI policy.

On Friday, at her son's request she had brought him home-cooked food which he ate with good appetite. On Saturday, he was upset because Madalyn had not visited him. He was restless, short of breath, did not talk much, but was lucid. He commented that his sleeping medication for the previous night had been very effective.

Two nurses on the 3:00–11:30 shift testified about the medication the decedent received. They were of the opinion that while decedent was on medication he was rational, aware, and in possession of his mental faculties.

Foster Mays, a fellow employee and close friend of the decedent, had had surgery similar to that decedent required. Dockery was aware of the serious nature of the operation. He advised Mays that he had fixed up all of his business matters and that his mother would receive the GI policy proceeds.

The parties agree that Earl Dockery was entitled to change the beneficiary in the policy at any time he desired. They do not agree that he intended to eliminate his mother from the policy and substitute therefor his wife. Since the change of beneficiary forms were delivered after Dockery's death, the parties further agree that where the insured has manifested the intent to change his beneficiary and has done everything reasonably necessary to accomplish a change, leaving only ministerial acts to be performed, courts of equity will treat that as done which ought to be done, thus effectuating the intent of the insured. Collins v. United States, 161 F.2d 64 (C.A.10, 1947). See Lindsey v. United States, 121 F.Supp. 1 (E.D.Tenn.1954); Mutual Savings Life Insurance Company v. Cowan, 188 F.Supp. 148 (E.D.Tenn., 1960), cases that were tried in this Court.

The attorneys for Clara concede that the proof failed to show that Earl did not have the mental capacity to make the change of beneficiary at the time Madalyn claims that it was made. They claim, however, that the totality of circumstances surrounding the claimed change show that the Murphys and Madalyn committed a fraud in obtaining his signature to the change. Clara contends that he was under medication at the time of the so-called change; that his medication included tranquilizers and other drugs; that he was highly nervous and that although he may have signed his name to the application, the beneficiary was not filled in at the time he signed it and that he did not know that the form contained a change of beneficiary.

What appears to be the strongest evidence in the record to support her contention are her own statements that her son stated to her on Friday and Sunday that the beneficiary had not been changed and would not be changed and that on Saturday she was in the hospital from 10:00 A.M. to 10:00 P.M. and neither Madalyn nor the Murphys were in the hospital during those hours. The Murphys and Madalyn testified that the change was made between 7:00 and 8:30 P.M. on Saturday.

We do not believe the evidence is sufficient to show that undue influence was used on Earl to get him to make the change. The proof shows clearly that Madalyn wanted the change made even before marriage and that she was determined to have it made after marriage, but the evidence does not show that she used any methods to get the change made other than those that would be used by any other wife who felt she was entitled to be named as a beneficiary in her husband's life insurance policy. New York Life Insurance Company v. Wright, 229 Mo.App. 950, 88 S.W.2d 403, 408–409 (1931); Rogers v. Hickam, 30 Tenn.App. 504, 208 S.W.2d 34 (1947).

Attorneys for Clara have cited authority dealing with abuse of the fiduciary relationship, e. g. Turner v. Leathers, 191 Tenn. 292, 232 S.W.2d 269 (1950). The relationship between this husband and wife is not analogous to the facts of those cases. Furthermore, the Court is convinced the evidence presented to support Madalyn's claim is sufficient to rebut any inference of fraud or undue influence.

Parties will submit an order in accordance with this memorandum.