HELEN AGATHA WATTS, Plaintiff, v. C. F. WATTS, Appellant; FRED L. MILLER, Clerk of District Court, Petitioner-Appellee; WARD HATTER, Guardian, Intervenor-Appellant; HELEN AGATHA WATTS, Intervenor-Appellee.

No. 47392.

(Reported in 36 N. W. 2d 347)

MARCH 8, 1949.

Hatter & Hatter, of Marengo, for appellants.

Lundy, Butler & Lundy, of Eldora, for appellee.

BLISS, J.—The real parties in interest joined with the petitioner in asking for clarification and modification of the original

divorce decree, and also prayed for such general relief as the court might deem equitable in the premises.

For several years, plaintiff and defendant, as wife and husband, lived at Marengo, Iowa county, where the husband was a physician and operated a hospital. They also owned and operated certain real and personal property, known as "Iowa Valley Stables", as a copartnership engaged in the purchase, sale and training of show horses. Having no children, they adopted Elissa, age three September 13, 1947, and Craig, age two December 24, 1947.

On June 21, 1947, they separated, and plaintiff went to Eldora, Hardin county, and lived in a rented cottage on a lake east of town. Defendant brought suit in Iowa county for the appointment of a receiver of the partnership and an accounting, and plaintiff brought a divorce suit in Hardin county. Prior to the anticipated decree of divorce, the parties entered into a written stipulation settling all property rights and claims of all kinds against each other. Under the agreement plaintiff received the property known as the "Iowa Valley Stables" and furniture and equipment, coach dogs, ten horses, and an airplane, all encumbered by mortgage liens securing an indebtedness of $6325 to a Marengo bank, which she assumed and agreed to pay, in addition to all contracts and debts of the horse business. The doctor agreed to help her to get a six-months' extension of the bank obligations. The agreement provided for the disposition of both suits and the settlement of all marital obligations. Plaintiff also received a residence property in Marengo.

The stipulation provided that plaintiff should have the custody of the two adopted children, and that defendant should have the right to visit them at reasonable hours as frequently as he desired. The stipulation also provided that defendant "agrees to pay for the care, education and support of Elissa Watts, the sum of $125 per month, said payments to commence July 15, 1947, and to continue until said child attains the age of 18 years, or marries, or until the death of said child; whichever event first occurs." There was a like provision for the minor, Craig Watts.

The stipulation also provided that "the payments above

provided for, shall be made through the office of the Clerk of the District Court of Iowa, in and for Hardin County." It was further provided that should the plaintiff (wife) remarry, the matter of the further custody and support of the children might be submitted to the Hardin County District Court if the parties were unable to agree.

On July 10, 1947, a hearing was had and a consent decree was entered by the district court of Hardin county on the written appearance of defendant, granting an absolute divorce to Helen Watts, and providing: "That the stipulation, as entered into by and between the parties heretofore filed in this cause, and all the provisions and conditions therein contained, be and the same is by this reference hereby adopted and incorporated herein as a part of this decree the same as if fully rewritten herein."

On the day the divorce was granted, plaintiff herein left her rented cottage in Hardin county and returned with the two children to the home in Marengo, received by her under the stipulation. Defendant paid the July allotment of $250 for the children to the clerk of the Hardin County District Court, as provided in the stipulation and decree, without any directions as to whom it should be sent, and it was remitted to the plaintiff without any protest from defendant.

On August 2, 1947, defendant executed and filed in the district court of Iowa county his petition, alleging the fact of his divorce and stipulated obligation to pay the award for the care, support and education of the two minor children, their custody by their foster or adoptive mother, and that since the monthly payments were largely in excess of the children's present needs, and the excess should be preserved for their future needs, he prayed for the appointment of guardian of the property of the children including the said monthly payments. At an ex parte hearing of which no notice was given the mother, who was living in Marengo, Ward Hatter was appointed such guardian on August 2, 1947, under bond of $1000. The appointed guardian accepted and qualified.

Defendant made the $250 payments for August, September and October 1947 to the clerk as provided in the decree, without any directions and they were sent to plaintiff. She operated

the "Stables", and in August and September exhibited horses at shows in Ames and Clinton, and drove home several nights from the shows. During this time she was in Missouri attending to business matters and looking up a new location which she selected a few miles from Springfield, Missouri. She sold the home at Marengo, which was unencumbered, and also the "Stables", and about October 1, 1947, she took her horses and their equipment to the new location, and with the children took up her residence there. The place which she bought was a forty-acre tract, improved with a fourteen-room stone residence having modern conveniences, and with barns necessary for the show-horse business. She brought with her, the horse trainer who had been in the employ of the partnership at Marengo.

On November 14, 1947, Hatter & Hatter, attorneys for Mr. Watts, sent his check for $250 to the clerk at Eldora payable to his order, together with a certificate from the Iowa county clerk of the appointment and qualification of Ward Hatter, as guardian of the minors' property. The letter requested that the proceeds of the check be sent to the guardian. Mr. Miller, the clerk, promptly answered that he thought he had no authority to remit to the guardian, and that pending the court's instruction he would hold the check or return it to the sender, if the latter so desired. The December check was sent to the clerk with the same instructions. On February 24, 1948, defendant's attorneys sent a C. F. Watts check dated January 15, 1948, for $250, and one of like amount dated February 15, 1948, each payable to the guardian and the clerk, with the direction that the checks for November and December 1947 be returned. On February 26, 1948, the lawyers wrote a letter reviewing the previous correspondence and informing the clerk at Eldora that Mr. Watts was withdrawing his restrictions on remittances, and that he would make payments in compliance with the decree, and it would be for the clerk to determine whether to remit to the guardian or to the plaintiff, and that no claims would be made against the clerk. On February 27, 1948, the clerk acknowledged receipt of the checks of January 15 and February 15, and returned the checks payable to himself and the guardian.

On April 10, 1948, the clerk filed his petition for direction. Thereafter numerous pleadings were filed, the essence of which we have stated. On May 18, 1948, on application of Mr. Watts in the guardianship in the district court of Iowa county, an order was made confirming the earlier appointment of the guardian and reappointing him. The guardian requalified.

The hearing in the present proceeding was before Honorable Sherwood A. Clock, Judge of the Eleventh Judicial District at Eldora on May 26, 1948. The defendant introduced as exhibits, the letters noted, proceedings in the guardianship; the stipulation of settlement and decree in the divorce action, and rested. Plaintiff as a witness for herself was examined and cross-examined at length, very largely as to the operation of the horse business in Missouri, and for what purposes the remittances for the children were spent. As noted herein these remittances were not made to her for some months pending instruction to the clerk by the court. Over objection she testified that at the time the stipulation was made Mr. Watts told her that the remittances were to be sent to her. Mr. Watts denied this on rebuttal. In substance she testified that all of the remittances received by her had been commingled with her own personal funds in her checking account in the bank, upon which she drew checks for her own personal and household needs and for all of the needs of the children. She testified that she may have paid some taxes by checks on this account. Funds received and spent in the operation of the horse business were deposited and withdrawn from a separate bank account. She testified that she was with the children practically twenty-four hours of the day and night and gave them her personal care and supervision, supplemented by the help of a competent maid, who also assisted with the general household duties. She furnished the children with proper food, clothing, nursing, medical care, recreation, toys, and other things usually given to children by their parents. She was teaching the little girl to distinguish various objects in children's books, and to count. There was a pre-kindergarten school in the neighborhood to which she would be sent when she was four years old. Plaintiff had limited her work at the horse shows to a single exhibition of driving a horse in harness.

Most of the shows were in driving distance and she sometimes took the children with her. She kept records showing as best she could all of the expenses of the children although it was impossible to exactly apportion the expense of the food which they ate and the maid service. Appellants complain much because the horse trainer stayed at her house and ate at the family table and that at times grooms and other helpers ate their noonday lunch and other meals at the house. She testified that during the months when the remittances were not received she supplied all of the needs of the children, and when the remittances did come they were all required and were all used in furnishing those needs. She paid the maid $80 a month. She testified that whenever the remittances in the future might fall short of the amount necessary to properly care for, support and educate the children, she would supply the deficit from her own resources.

The trial court found that the children were receiving from the plaintiff the proper care, support, consideration and comfort to which they are entitled and that the entire monthly sum allowed under the original decree was then necessary and proper for them, and had been judiciously and reasonably expended by plaintiff; that their care, support, and education can best be effected by the payment of the support money as provided by the original decree to the plaintiff as long as conditions remain substantially as they were then; that such was the intention of the parties to the stipulation, and the continuance thereof would be to the best interests of the children and would not be to the detriment of the parties or to their rights.

The court further found that to "deliver the moneys into the hands of the * * * guardian would be to place the funds collected under the order of this court into the hands of a guardian who is not subject to the orders of this court but is subject only to the orders or direction of a court of another jurisdiction, and where the funds might or might not be used as contemplated by the original decree of this court; and this court would lose jurisdiction of such funds if such payments should be made to such guardian, acting only through the orders of such a court foreign to this jurisdiction; and that this court is without authority or jurisdiction to so dispose of such funds."

The court then decreed that the original decree should be clarified and modified so as to expressly provide that the clerk of Hardin County District Court should "pay all such sums as they are received to the plaintiff for the care, support and education of the minors, until the further order of this court shall provide otherwise," and that this order shall apply to all past and future sums so coming into the clerk's hands.

Appellants assign the following errors: in ordering the monthly sums paid to the plaintiff instead of to the guardian; in finding that the entire monthly sum was necessary for the care and support of the children and that it was judiciously and reasonably expended; in finding that the convenience and best interests of all parties were best served by sending the money to plaintiff; in finding that it was the intention of the parties to the contract that the money should be paid to plaintiff, and in permitting plaintiff to testify to such intention; and in refusing to appoint the guardian as guardian ad litem of the children.

I. We are not disposed to disagree with the above-noted findings and conclusions of the able and experienced trial court, nor to disturb the decree in modifying and clarifying the original decree of divorce.

The stipulation of settlement was fairly executed and entered into by the parties with full knowledge of all matters involved. It was agreed that the plaintiff should have the custody of the children, with the heavy burdens incident thereto of their daily care and comfort in sickness and in health, their pleasures and recreation, their mental, moral and physical training, home schooling, and the direction and supervision of their education in the years to come in schools. By agreement the defendant relieved himself of the work and worry unavoidable in the performance of these services and duties, which do not decrease in the months and years ahead. As their foster father and as the husband of the plaintiff he was obligated to do his part in performing these services. He shifted his obligation to her and agreed to pay $125 every month for the "care, support and education" of each child. These are broad and inclusive terms. They mean something more than just clothes, food and books.

First, there must be a shelter, a furnished home, a livable household, special beds, bedding, and other equipment not necessary for adults, special foods, and other articles and necessities for their physical welfare. There is the never-ending labor and attention for their proper care. All of these things cost money—a very considerable amount thereof. Of some of these only a fair, proportionate share should be charged against the support fund paid by the defendant. At best this share could only be estimated.

The defendant knew when the settlement was made that plaintiff would continue the horse business. He had full knowledge of how such a business was ordinarily operated whether at Marengo or elsewhere. The trainer and the grooms and helpers had to spend much time at the stables. The copartnership furnished living quarters for the same trainer who she took to Springfield. He knew that the children must live with plaintiff under conditions incident to her operation of such business. He knew that in maintaining the business and her home that those connected with the business and others would probably eat at her table. The proper maintenance of the business she was in may have been necessary in providing her a living and a home for the proper care, support and education of the children. The evidence does not fairly establish that she misused or misspent the remittances. The primary purpose of these remittances was the daily care of these children, month by month, and not to build up a reserve to lighten his burden in later years. It was his duty to pay these sums monthly as provided in the stipulation and the decree. Without a contract he was liable for their needs during their minority. The remittances were, of course, not the property of the plaintiff. She was merely the custodian of the funds with the right and duty to use them as provided in the decree. Having the children under her custody, care and control, she is the one best situated and best fitted to know what is needed and best for them. In this she may use a sound discretion. Their requirements will vary from time to time. Because of sickness, medical or dental care, or other matters, the monthly sum may fall short. The amount thereof was no doubt fixed to be adequate to meet the anticipated average monthly needs. The

needs may sometimes be urgent and she ought not be compelled to apply to a guardian acting under orders of a court many miles away.

A reasonable interpretation of the support clause in the stipulation is that the clerk should remit the money to her. To whom would he send it if not to her? He was not troubled about it. Until protest was made he sent all remittances direct to her. Defendant first so construed his contract and gave the clerk no other directions. His construction is convincing proof that such was the intention of himself and plaintiff when the agreement was made, though it was not definitely expressed therein. If he had other intentions he may have misled the plaintiff. For some reason on August 2, 1947, the twenty-third day after the divorce decree was entered on July 10, 1947, he applied for the guardian.

II. There is no merit to appellants' assigned error that plaintiff should not have been permitted to testify that defendant told her when the agreement was made the remittances were to be sent direct to her. There was some question about the matter on the face of the stipulation. The testimony was admissible to clarify it and to remove any doubt. See Aultman v. Meyers, 239 Iowa 940, 947–950, 33 N. W. 2d 400, 404, 405.

III. The facts are controlling in the determination of the case. Neither party has cited any authority directly applicable. Appellee does not question the appointment of the guardian, but contends that the plaintiff is entitled to receive the remittances direct from the clerk of the Hardin County District Court, and not through the medium of a guardian of any property of the children. All parties were before the court and properly represented. There was no error in refusing to appoint the guardian as guardian ad litem of the minors, although neither harm nor benefit would have resulted had it been done. Both foster parents and the guardian were in court, and each claimed to be representing the minors and championing their rights. In 2 Nelson on Divorce and Annulment (1945) Second Ed., section 14.90, it is stated:

"Ordinarily an allowance for support of children should be made payable to the wife rather than a third person, such

as the legal guardian of the child other than the mother, but it has been held that the allowance may be ordered paid to an officer of the court charged with the duty of carrying the decree into effect. So it has been held that a direction to pay the support money to the clerk of the court to be applied by him to the maintenance of the children is proper."

The district court of Hardin county will always be open, on proper application, to any relief to which any of the parties may be entitled.

The decree is affirmed.—Affirmed.

All JUSTICES concur.