**PROSE v. DAVIS et al.**

No. 9839.

United States Court of Appeals
Seventh Circuit.

Oct. 26, 1949.
Rehearing Denied Nov. 18, 1949.

Robert J. McPeak, Terre Haute, Ind., Ernest M. Causey, Terre Haute, Ind., Aikman, Piety & McPeak, Terre Haute, Ind., Miller, Causey & Aldridge, Terre Haute, Ind., for appellant.

Thomas P. Gallagher, Howard T. Batman, David I. Day, Jr., Terre Haute, Ind., B. Howard Caughran, U. S. Atty., Indianapolis, Ind., for appellees.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

This appeal presents a somewhat different aspect of the problem of the determination of the beneficiary of a policy of National Service Life Insurance. The controversy is between a sister of the insured, who contends that he designated her as the beneficiary of his policy after the death of their father whom he had originally designated, and their stepmother who relies upon her status in loco parentis to recover by operation of law. We shall refer to them as plaintiff and defendant.

Many of the facts were stipulated, and additional evidence was introduced on the hearing. The following facts were introduced by stipulation. The insured was a brother of plaintiff and the stepson of defendant who married his father in 1928 when he was thirteen years of age. He entered military service on September 4, 1942, and obtained two policies of National Service Life Insurance. The first named his father as beneficiary with no contingent beneficiary designated, and the second named his father, with his sister as contingent beneficiary Both policies were in effect at the time of his death in December, 1944. The suit here involves only the first policy. The records of the War Department and of the Veterans' Administration show no change of beneficiary with respect to it. Between April 6, 1944, and July 11, 1944, the insured wrote a series of letters to plaintiff, all of which were to be received in evidence without objection. The insured made a Class E allotment of $25 a month to plaintiff beginning in May, 1944. Plaintiff received a series of notices from the War Department, three of them telling of slight wounds suffered by him, a fourth, that he was missing in action, and a fifth, that he had been killed; after his death plaintiff received three shipments of his personal effects from the War Department and also a Purple Heart Medal posthumously awarded to the insured. The insured named her as his beneficiary to receive his death gratuity.

Both plaintiff and defendant filed claim for the insurance before the Veterans' Administration; it denied plaintiff's claim and awarded the insurance to defendant. The parties further stipulated that defendant stood in loco parentis to decedent for more than one year during his minority and prior to his induction into the Army.

In addition to the stipulated facts plaintiff introduced evidence that the insured was called home on emergency furlough in March, 1944 because of the illness of de-

fendant. While he was at home his father died March 26. He remained at home until after the funeral and during that period he expressed regret that he had not designated plaintiff as the contingent beneficiary of both his policies and stated his intention of making a change as soon as he returned to camp, designating her to receive all his insurance.

Two members of the division in which the insured served were witnesses for plaintiff. One, the sergeant of his squad, testified that shortly after his return to duty following his father's funeral, the insured asked his advice as to how to change the beneficiary of his insurance and obtained permission to go to Personnel Headquarters for that purpose. Because of the rush there on that day he obtained permission to go again the following day, and upon his return, in response to the sergeant's question, he told him he had straightened out his insurance beneficiary and that he had designated his sister "as beneficiary of his National Service Life Insurance." The sergeant stated that he had questioned all the men in his squad about their insurance and other matters in order to make sure that their affairs were in order—this was a part of his duty as the outfit was preparing for overseas movement.

Lieutenant Hinckley, the leader of the platoon to which the insured was attached, likewise testified that he had given him permission on two successive days to go to Personnel to change his beneficiary and, upon his return, the insured had told him that "he had his insurance completed, signed all the forms, and that as far as he knew everything was in order," and that he had changed it to his sister. The lieutenant testified further that he had filled out a personal record card for each member of his platoon, and he used this card to refresh his memory at the hearing. According to it, the insured stated that he had $10,000 insurance and that his sister, Gretchen A. Prose, was the designated beneficiary of the entire amount.

Photostatic copies of the military record of the insured were introduced in evidence.

His induction report designated as his beneficiary, in case he died without leaving a widow or child, his father, and, in case of his father's death or disqualification, then his sister. An insert to his service record shows that AGO Form No. 41 was forwarded April 11, 1944, designating his sister as his beneficiary and also naming her as his nearest relative and the person to be notified in emergency. Below the name and address of the beneficiary was the comment, "Soldier declines to designate alternate beneficiary to receive this pay." The Adjutant's certificate of the record includes a note that no record had been found of AGO Form No. 41 referred to in the insert.

Plaintiff also introduced the nine letters referred to in the stipulation. The first was written the day after his return to duty following their father's funeral. In this he referred to the fact that he had told her that he would have to have his papers changed and would have his father's name taken off and hers put on. Three days later he wrote that he was having it done—"they will be all in your name." On April 11, the date of the service record insert, he wrote that he had all his papers fixed up and they were all made to her. April 12, he referred to his papers—"they said you would get a new one that they was no good but you know where they are if you do need them but you will get all the new one now." In later letters he repeatedly referred to the fact that he had *all* his papers changed or fixed and she would receive his allotment.

Defendant contends that all of the evidence relied upon by plaintiff refers to other gratuities of which plaintiff was unquestionably the beneficiary, and that there is no evidence relating to the insurance.

The court, without any reference to the additional facts adduced on hearing, found the facts as stipulated by the parties and added three further findings: That defendant stood in loco parentis to the decedent at the time of his death; that C. A. Arnold (the father) had not survived the insured and, according to the regulations of the Veterans' Administration, the proceeds were payable to defendant by reason of the fact that the insured left surviving

481

no widow, no children, and no parent, and she was the person who stood in loco parentis; and that no change of beneficiary with respect to the policy was ever made after the death of the father. He therefore concluded that defendant was entitled to the proceeds of the policy and rendered judgment accordingly.

Section 602 (i) of the National Service Life Insurance Act, 38 U.S.C.A. § 802 (i), provides that if no beneficiary is designated, or if the beneficiary does not survive the insured, the beneficiary shall be determined in accordance with the order specified in § 602 (h) (3) which in turn provides that if there is no widow or child surviving, the insurance shall be payable to the parent, which, by amendment to the Act in 1942, § 7, 56 Stat. 659, 38 U.S.C.A. § 801 (f), includes "persons who have stood in loco parentis * * * at any time prior to entry into active service for a period of not less than one year * * *" and, if no parent, then to brothers and sisters of the insured. Hence there is no question but that if the insured did not designate plaintiff as the beneficiary of his insurance, defendant is entitled to it under the terms of the Act.

■ Plaintiff's claim rests on what appears to us to be a very substantial volume of evidence to the effect that decedent intended to designate her as the beneficiary of his insurance, together with the uncontradicted evidence of two disinterested witnesses, carrying definite and firm conviction that he not only intended to name her but had taken positive steps to make the change and afterwards assured them that he had made it. It does not appear from the findings of the court whether he disbelieved all of this evidence, or whether he considered it insufficient to effectuate the designation of plaintiff. Plaintiff repeatedly calls attention to the fact that this is not a case of change of beneficiary—defendant had never been named by the insured and he had never manifested any intention of having her as his beneficiary. However, in our view of the case, it is unnecessary to decide whether a greater quantum of proof is essential to effectuate a change of beneficiary than to make an

original designation. We are convinced that the undisputed evidence in this case is ample for either purpose, and the court's finding to the contrary appears to be clearly erroneous, hence may be reversed by us. United States v. United States Gypsum Co., 333 U.S. 364, 394, 395, 68 S.Ct. 525, 92 L. Ed. 746.

■ Variously stated, many courts have adopted the rule that in cases involving change of beneficiary in military service insurance policies they will brush aside legal technicalities in order to effectuate the manifest intent of the insured, and if the insured has expressed an intention to change the beneficiary originally named in his policy and done an affirmative act to effectuate the change, leaving only ministerial acts to be performed by the insurer, they will treat as done that which should have been done and give effect to his intent. Shapiro v. United States, 2 Cir., 166 F.2d 240; Mitchell v. United States, 5 Cir., 165 F.2d 758; McKewen v. McKewen, 5 Cir., 165 F.2d 761; Collins v. United States, 10 Cir., 161 F.2d 64; Bradley v. United States, 10 Cir., 143 F.2d 573; Roberts v. United States, 4 Cir., 157 F.2d 906; Rosenschein v. Citron, 83 U.S.App. D.C. 346, 169 F.2d 885; Egleston v. United States, D.C., 71 F.Supp. 114, affirmed, 7 Cir., 168 F.2d 67.

■ We think the undisputed evidence in this case fully satisfies these requirements. It is immaterial, under the facts here, that the Veterans' Administration had no record of the change and that the wrong form may have been used to effect it. We note that the same difficulty has arisen in several of the cases cited above, namely, the use of AGO Form No. 41 when the soldier desired to change the beneficiary of an insurance policy. In the Shapiro case, the officer assigned to the duty of assisting in such matters stated that he did not know that Form No. 41 was intended by the Department to be used only to designate the beneficiary of gratuity payments and knew of no other form for use for life insurance. The court there held that since the form did not state in terms for which use it was designed, oral statements of the insured were admissible to resolve the am-

biguity. The same situation arises here. The evidence is uncontradicted that the insured asked advice and assistance in order to change his insurance and that it was his insurance he was primarily interested in taking care of; the sergeant and lieutenant both inquired independently as a part of their duty whether he had made the change, and he told them he had "signed all the forms," thus indicating that he thought he had completed the necessary formalities, in writing, to effect the change. The service record corroborates the fact that at about the same time he executed the Form No. 41, which appears to have been so frequently used by mistake to effect a change of beneficiary that courts have recognized and permitted its use for that purpose where to hold otherwise would frustrate the manifest intent of the insured.

It follows that the court should have entered judgment for plaintiff instead of for defendant. The judgment is accordingly reversed, and the cause remanded with direction to enter judgment for plaintiff.

Reversed and remanded.