Mildred Lucille KRIMLOFSKI, Plaintiff,

v.

UNITED STATES of America, Mina May Krimlofski, and Richard Emil Krimlofski, Defendants.

Civ. No. 786.

United States District Court
N. D. Iowa,
Central Division.

Jan. 24, 1961.

A. J. Hobson and G. Arthur Cady, Hampton, Iowa, for plaintiff.

Michael L. Mason and John F. Stone, Mason City, Iowa, for defendants Mina May Krimlofski and Richard Emil Krimlofski.

Francis E. Van Alstine, U. S. Dist. Atty., and Philip C. Lovrien, Asst. U. S. Dist. Atty., Sioux City, Iowa, for defendant United States.

GRAVEN, District Judge.

Richard Herman Krimlofski was the insured under National Service Life Insurance policy V–8189463 in the amount of $10,000 issued by the Government. He died on March 25, 1958, as the result of injuries received in a motor vehicle mishap. The plaintiff Mildred Lucille Krimlofski is the widow of the insured, and the defendants Mina May Krimlofski and Richard Emil Krimlofski are his parents. Following the death of the insured, the plaintiff filed a claim for the full amount of $10,000 with the Veterans Administration as the sole beneficiary of the policy. The defendants also filed claims with the Veterans Administration claiming that each of them was entitled to $3,333.33 as beneficiary of the policy. Because of the conflicting claims, the Veterans Administration withheld payment of the amount due under the policy. The plaintiff then commenced this action against the United States of America for the full amount of the policy.

At the time of the commencement of this action on June 19, 1958, the statutes granting jurisdiction to the United States District Courts to resolve controversies arising from disagreements over claims to benefits under National Service Life Insurance contracts were scattered throughout Title 38 U.S.C.A. (1952 edition). In September, 1958, all laws relating to veterans' benefits were revised, codified and enacted by Congress as Title 38 U.S.C.A. (72 Stat. 1105 et seq.) and all provisions dealing with jurisdiction of the District Courts in controversies of this nature were included in Section 784, Title 38 U.S.C.A. (72 Stat. 1165). The recodification did not change the substance of the existing jurisdictional provisions, but reference to such provisions will be made as they existed at the time

this action was initiated rather than to the current provisions.

Section 817 of Title 38 U.S.C.A. (1952 edition), 54 Stat. 1014 (1940), as amended by 71 Stat. 159 (1957) provides:

"In the event of disagreement as to any claim arising under this Act, suit may be brought in the same manner and subject to the same conditions and limitations as are applicable to the United States Government life (converted) insurance under the provisions of section 19 of the World War Veterans' Act, 1924, as amended."

Section 19 of the World War Veterans' Act, above referred to, appeared at the time this action was commenced as Section 445 of Title 38 U.S.C.A. (1952 edition), 43 Stat. 612, as amended, and provided in part:

"In the event of disagreement as to claim * * * under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United States either in the United States District Court for the District of Columbia or in the district court of the United States in and for the district in which such person or any one of them resides, and jurisdiction is conferred upon such courts to hear and determine all such controversies."

That Section further provides that in cases where the Veterans Administration acknowledges the debt and there is a dispute among the persons entitled to payment, the Veterans Administration may bring an action in the nature of a bill of interpleader in the name of the United States in the Federal District Courts. Persons claiming an interest in such insurance who are not found within the district where suit is brought may be brought in by order of Court and served in such reasonable manner as the Court shall direct.

When the plaintiff commenced this action against the defendant United States of America, that defendant in its answer filed a counterclaim for interpleader, admitting liability under the policy and agreeing to pay the proceeds thereof to the party lawfully entitled thereto. Upon application of that defendant, Mina May Krimlofski and Richard Emil Krimlofski were made parties to the action. The defendants Mina May Krimlofski and Richard Emil Krimlofski filed an answer wherein they claim to be co-beneficiaries with the plaintiff under the policy in question and each prays for one-third of the proceeds of the policy, or $3,333.33. The plaintiff has made a due and timely demand for a jury trial. The defendants Mina May Krimlofski and Richard Emil Krimlofski will hereinafter be referred to as the defendants. The defendant United States of America will hereinafter be referred to as the Government.

The parties, pursuant to agreement, presented all of their evidence to the Court without summoning a jury. The parties agreed that following such presentation the Court should determine whether the evidence was such as to present a case submissible to a jury or whether the plaintiff was entitled to judgment as a matter of law. The situation is the same as if adverse parties had presented all of their evidence with a jury present and then motions were made for directed verdicts. The situation is analogous to that which would be presented where a motion for summary judgment was made in advance of trial and the Court had before it in connection with that motion all of the evidence of the parties.

The policy in question was originally taken out by the insured in September, 1943, shortly after he entered the armed forces to serve during World War II. The designation of beneficiary which is herein disputed was made by the insured in conjunction with an application for renewal of his contract on a five-year level premium term plan on September 27, 1951. This application for renewal was made on an official Veterans Administration form 9–1658 which included a provision for "Beneficiary Designa-

tion." That portion of the application was filled in by the insured on a typewriter and was as follows (filled-in items appear between solid lines):

"Beneficiary Designation (Indicate Whether Principal or Contingent) and Selection of Optional Settlement (See Instructions 5 and 6)

| Complete Name and Address of Each Beneficiary (If married woman, her own first and middle names and husband's last name must be given) | Relationship | Amount | Option |
|---|---|---|---|
| Mildred Lucille Krimlofski, 1624 Victor Omaha, Nebr. | Wife | $10,000.00 | 1 |
| Mina May Krimlofski, 1624 Victor Ave. Omaha, Nebr. | Mother | $10,000.00 | 1 |
| Richard Emil Krimlofski, 1624 Victor Omaha, Nebr. | Father | $10,000.00 | 1 |

"

The application for renewal which contained the above provisions was signed by the insured in Cedar Rapids, Iowa, on September 27, 1951, and is marked as received by the Veterans Administration on October 3, 1951. Instruction number 5 referred to in the above form is found on the back thereof and contains, in part, the following:

"  *  *  * Any named beneficiary may be designated as 'Principal Beneficiary' or 'Contingent Beneficiary.' Any named beneficiary who is not designated as 'Contingent Beneficiary' will, in general, be presumed to be a principal beneficiary.  *  *  *"

Instruction 6 referred to in the above form outlines the various settlement options under the policy. Option number "1," which was selected by the insured for all named beneficiaries, was a settlement in one lump sum.

It is the position of the defendants Mina May Krimlofski and Richard Emil Krimlofski (hereinafter referred to as the defendants) that, under the September 27, 1951, designation of beneficiaries, which was the last such designation made by the insured before his death, no specification is made as to whether the named beneficiaries were to be principal or contingent beneficiaries. For this reason the defendants urge that all three named beneficiaries are deemed to be principal beneficiaries under the terms of the form 9–1658 above set forth and as such should divide the proceeds of the policy equally.

The plaintiff makes two contentions. Her first contention is that because her name appears first in the list of beneficiaries and because it is designated that she is to receive $10,000, such designation exhausted the full amount that could become due under the policy and there was no balance left under the policy upon which the later designations of the defendants could operate. The plaintiff asserts that the construction of the provisions of the policy is for the Court. The plaintiff further asserts that on its face the policy shows that she is entitled to the full $10,000 and that the Court should so construe it. The plaintiff contends in the alternative that the designation of

the beneficiary is ambiguous and that the uncontradicted evidence is such as to entitle her to judgment at this stage.

It is the contention of the plaintiff that if the designation of the beneficiaries of the policy be regarded as ambiguous extrinsic matters may be resorted to for purposes of clarification. In that connection the plaintiff relies upon the background of the situation and upon facts and circumstances surrounding the application in question, particularly prior designations of beneficiaries and changes thereof made by the insured under the same policy. The plaintiff urges that an examination of the surrounding circumstances establishes beyond question that the insured by his 1951 designation intended that she was to be the sole beneficiary of the policy.

The plaintiff presented the testimony of several witnesses as to conversations with the insured after the execution of the 1951 application. The plaintiff testified as to the background of the insured and as to conversations with him relating to the policy. Her testimony as to conversations with the insured and the testimony of the other witnesses as to conversations with the insured relating to the beneficiary provision of the policy was objected to by the defendants. The evidence was received subject to the objections, and those objections were submitted with the case.

The first question to be considered is whether extrinsic evidence may be resorted to in connection with the designation of the beneficiary in the present case and, if so, just what type of evidence may be considered. In the discussion of those matters it is assumed that the designation of beneficiaries made by the insured is ambiguous as to his intent in connection therewith. The background of the situation will first be discussed. The insured first made application for National Service Life Insurance on September 22, 1943. At that time he was 22 years of age and unmarried. The application was made on official Veterans Administration form 350. This form contained a space to be filled in as to beneficiaries. The policy applied for was five-year level premium term plan insurance in the amount of $10,000. The form had a blank space in which the name of a principal beneficiary was to be inserted and another blank space for use in designating a contingent beneficiary. The decedent inserted the name of his mother in the first space and the name of his father in the latter space. After being discharged from the Service, the decedent attended Iowa State University of Agriculture and Mechanical Arts at Ames, Iowa. While in the University he let his policy lapse. On January 30, 1947, while still in the University and still unmarried he made an application for reinstatement of the policy. In that application he made the following designation of beneficiaries (the filled-in portion was handwritten in ink):

"Beneficiaries:  1.  Mrs. Mina May Krimlofski, mother, $10,000
2.  Mr. Richard Emil Krimlofski, father, $10,000"

---

Below this designation was typewritten, "I wish to have my beneficiary paid in lump sum amount in case of my death in the amount of $10,000."

In February, 1948, shortly after his graduation from the Engineering College of the University, the insured and the plaintiff were married in Akron, Ohio. Following their marriage the plaintiff and the insured lived at Barberton, Ohio. They later moved to Cedar Rapids, Iowa, and were living there at the time of the death of the insured. While residing at Barberton, Ohio, the insured filled out and signed an application to change the beneficiary of his National Service Life Insurance policy which was made on an official Veterans Administration form

9-336 designated for that purpose. Such application was dated March 8, 1948. The new designation of beneficiary contained therein was as follows (the filled-in items were printed in ink):

| "Complete Name and Address of Each Beneficiary * * * | Relationship To Insured | Amount of Insurance To Be Paid to Each Beneficiary * * * |
|---|---|---|
| 1'st principal beneficiary Mrs. Mildred Lucille Krimlofski | Wife | $10,000 (to be paid in lump sum). |
| 1'st contingent beneficiary Mrs. Mina May Krimlofski | Mother | $10,000 (to .be paid in lump sum). |
| 2'd contingent beneficiary Mr. Richard Emil Krimlofski | Father | $10,000 (to be paid in lump sum).   " |

---

The above application was marked as received by the Veterans Administration on March 11, 1948. On March 18, 1948, the insured received an acknowledgment of the change from the Veterans Administration. The insured had no additional life insurance at the time he renewed his National Service Life policy on September 27, 1951, and apparently did not acquire any more until sometime in 1956 when he took out an additional $10,000 policy with a commercial insurance company. When this additional insurance was secured, the insured designated the plaintiff as the sole beneficiary thereunder.

In addition to the facts and circumstances heretofore discussed, the plaintiff relies upon testimony offered as to certain conversations between the insured and herself and between the insured and certain other individuals. All of the conversations so referred to took place at some time after September 27, 1951.

In 1953 the plaintiff and the insured built a home in Cedar Rapids, Iowa. The plaintiff testified that when they were discussing the matter of building a home the insured told her that she was to receive the full amount of his National Service Life Insurance policy, but that if she died before he did his mother was to receive the full amount of the policy, and if the plaintiff and his mother both died before he did the full amount of the policy was to be paid to his father. The plaintiff and the insured had no children. The plaintiff and the insured were both employed. They maintained a joint bank account. The plaintiff testified that the premiums on the policy in question were paid from their joint bank account.

Ernest O. Baker, a life insurance salesman of Cedar Rapids, Iowa, rented a portion of his home to the plaintiff and the insured from 1948 until they moved into the home they built. Mr. Baker testified that in 1953 the insured and he discussed the matter of the insured taking out a so-called mortgage loan policy for the purpose of paying off the mortgage on the home that was being built in the event of the insured's death and that in that discussion the insured told him that he had a National Service Life Insurance policy of which the plaintiff was the beneficiary. J. M. Boots of Hampton, Iowa, the father of the plaintiff, testified that in late 1957 or early 1958, while the plaintiff and the insured were on a visit to Hampton, that in the course of a discussion between him and the insured about how many people were being killed in automobile accidents the insured said that if anything happened to him the plaintiff would get all his insurance. Mrs. Hobart Dewey of Cedar Rapids, who had known the insured since he was a boy, testified that six months to a year prior to the death of the insured she called him on the tele-

phone and invited the insured and the plaintiff over for Saturday evening dinner. She further testified as follows:

"Well, he said he didn't know whether they could come over for dinner because he was expecting an insurance man over. He was going to take out some more insurance, and he said that he already had army insurance, but wanted more, and that he wanted Millie [plaintiff] to be well provided for in case anything happened to him, because she had always worked outside their home all through their married life, and he said she was very deserving, and that she was the sole beneficiary of all of his insurance."

The testimony of the plaintiff above referred to was objected to on the ground that she was incompetent to testify as to a conversation with a person since deceased under the provisions of Section 622.4 of the Code of Iowa, I.C.A., and also on the ground that her testimony involved hearsay. The testimony of the other three witnesses above referred to was objected to on the ground that the statements by the insured which were testified to constituted hearsay and were too remote in time to qualify under any exception to the hearsay rule.

In the present case there are involved claims to the proceeds of an insurance policy issued by the Federal Government. Jurisdiction in this case is based upon specific Federal statutes. Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides, in part:

"  *   *   * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held.  *   * "

The claimed inadequacies of Rule 43(a) and the problems connected with its application are discussed by Judge Estes in 24 F.R.D. 331, 332, 333, 334.

The defendants objected to the competency of the plaintiff under the so-called Iowa Dead Man's Statute, which is Section 622.4, Code of Iowa 1958, I.C.A. That Section provides, in part:

"No party to any action or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom any such party or interested person derives any interest or title by assignment or otherwise, and no husband or wife of any said party or person, shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased  *   * against the executor, administrator, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person,  *   *   *."

There is no Federal Dead Man's Statute. Fortunately, it is not necessary in this case to go into the complexities of the Iowa Dead Man's Statute. Neither is it necessary to consider the application, if any, of the state Dead Man's Statute in Federal Court litigation. Even if it be assumed that the Iowa Dead Man's Statute relied upon has application to this type of controversy, its prohibition does not apply to the plaintiff. Section 622.4 operates so as make certain parties incompetent to be examined as to any personal transaction or communication between such witness and a person since deceased. The statute is operative, however, only in regard to actions against the estate representative, heir at law, next of kin, assignee, legatee, devisee, or survivor of such deceased person, to recover from them in their capacity as estate representative, heir at law, next of kin, etc. The present action is on a contract of insurance and is basically one for recovery from the insurer. The fact that heirs of the deceased have also been made defendants does not alter the situation because their rights, if any, do not stem from their status as heirs but rather from the contract of insurance. See Petty v. Mutual Benefit Life Insurance Com-

pany, 1944, 235 Iowa 455, 15 N.W.2d 613, 615; O'Brien v. Biegger, 1943, 233 Iowa 1179, 11 N.W.2d 412, 426, 436; Shepherd v. Pacific Mutual Life Insurance Company, 1941, 230 Iowa 1304, 300 N.W. 556, 558–559; Range v. Mutual Life Insurance Company, 1933, 216 Iowa 410, 249 N.W. 268, 270; Shuman v. Supreme Lodge Knights of Honor, 1900, 110 Iowa 480, 81 N.W. 717; Ladd, Admission of Evidence Against Estates of Deceased Persons, 19 Iowa Law Review 521, 523 (footnote 5) (1934). The objection of the defendants to the competency of the plaintiff to testify as to transactions and communications with the insured is not valid.

The other objections of the defendants present two questions. The first question is as to the use of extrinsic evidence generally in connection with the interpretation of written documents. Wigmore has stated (IX Wigmore, Sec. 2470 (3d ed. 1940)):

"The truth had finally to be recognized that words *always* need interpretation; that the process of interpretation inherently and invariably means the ascertainment of the association between words and external objects; and that this makes inevitable a free resort to extrinsic matters for applying and enforcing the document. 'Words must be translated into things and facts.' * * * Perhaps the range of search need not be extensive, and perhaps the application of the document will be apparent at the first view; but there must always be a traveling out of the document, a comparison of its words with people and things. * * * the words of a document are never anything but indices to extrinsic things, and * * * therefore *all the circumstances must be considered which go to make clear the sense of the words,*—that is, their associations with things."

Similarly, in McCormick, Evidence, Sec. 219 (1954), the author states:

"No writing which is to be the basis of judicial action can be considered only in the abstract. Evidence of the surrounding circumstances must be resorted to, in order to identify the subject-matter and the persons referred to in the writing and to reveal the relations of the parties and the situation from which the transaction arose."

The Iowa Supreme Court has often applied a rule of construction which favors the reception of all material evidence concerning the circumstances under which a written instrument was executed which might enlighten the Court as to its meaning. One of the leading cases in this respect is Aultman v. Meyers, 1948, 239 Iowa 940, 33 N.W.2d 400, 404–405. The case involves the interpretation of a trust instrument where the Court had to determine whether it was intended that the trust should terminate upon the settlor's death and the residue of the trust estate pass under the terms of the settlor's will. The Court found that on the face of the instrument there was uncertainty and ambiguity and stated (at page 405 of 33 N.W.2d) that, "In such a situation it has uniformly been held by the court that * * * circumstances surrounding the parties and the transaction, and their conduct at the time, is admissible as bearing upon their intentions * * *." Other cases where the Iowa Court has admitted evidence of surrounding circumstances to aid in the interpretation of a written instrument include: Watts v. Watts, 1949, 240 Iowa 384, 36 N.W.2d 347, 352; Iowa Electric Company v. Home Insurance Company, 1945, 235 Iowa 672, 17 N.W.2d 414; Mealey v. Kanealy, 1939, 226 Iowa 1266, 286 N.W. 500, 506, 131 A.L.R. 945; Seeger v. Manifold, 1930, 210 Iowa 683, 231 N.W. 479, 481.

The Court of Appeals for the Eighth Circuit has also applied a rule of construction favoring resort to the surrounding facts and circumstances in the construction of written instruments in cases involving Iowa law. See Harrison Sheet Steel Company v. Morgan, 8 Cir., 1959, 268 F.2d 538, 542. See also Carter v. Certain-Teed Products Corporation, D.C.

N.D.Iowa 1952, 102 F.Supp. 280, 294–295.

■ The general rule of construction favoring the admission of evidence of surrounding circumstances to aid in the interpretation of written instruments is particularly applicable to transactions of a peculiarly unilateral nature such as the designation of beneficiary here involved, for in such situations the meaning or intent to be determined is an individual one and not a mutual one. In McCormick, Evidence, Sec. 220 (1954) the author states:

"Where the transaction embodied in the writing is a unilateral one, as a will or a deed of gift, then the donor's individual meaning may govern, when there is doubt whether one of several normal meanings * * * or whether a normal or local meaning was intended by him. Here evidence of surrounding circumstances may come in, and evidence of the donor's other expressions may be received to show the sense in which he * * * employed the term[s] used."

■■ It is the view of the Court that the provision contained in the Veterans Administration form 9–1658 which creates a presumption that all named beneficiaries not designated as "contingent beneficiaries" are principal beneficiaries is inserted principally for the protection of the Veterans Administration. See McKewen v. McKewen, 5 Cir., 1948, 165 F.2d 761, 764. In the instant case the Government occupies the role of a stakeholder and has no reason to demand strict compliance with the provision in question. See Pope v. Smalley, 6 Cir., 1956, 229 F.2d 349, 351; McKewen v. McKewen, supra; Zabor v. United States, D.C.1953, 113 F.Supp. 287, 288. The designation of beneficiary made by the insured in September, 1951, in conjunction with his application for renewal would seem to be sufficiently ambiguous that extrinsic matters may be referred to in order to shed light on the real intent of the insured. See Moore v. United States, D.C.1955, 129 F.Supp. 456, 458, and cases therein cited. All of the grants of the proceeds of the policy made therein could not be given effect in accordance with the amount and manner specified. Each beneficiary is listed as receiving $10,000 in a lump sum settlement.

The next question is whether the evidence as to the statements made by the insured was inadmissible because of the hearsay rule. Many statements having hearsay content are admitted in evidence if they serve some legitimate purpose other than merely to prove the facts asserted in the statement. One such example is when a declaration is used to show a state of mind in cases where the state of mind of the declarant at the time of the declaration is the precise point in issue. Such statements are not offered as proof that the facts asserted therein are true but as evidence from which the declarant's state of mind might be inferred. In such situations, there is little difficulty in justifying the admission of such statements as they are likely to be the only objective manifestations of the subjective fact sought to be proved. See Goodale v. Murray, 1940, 227 Iowa 843, 289 N.W. 450, 457–458, 126 A.L.R. 1121; VI Wigmore, Secs. 1725 et seq. (3d ed. 1940). There is more difficulty in justifying the admission of such statements in situations where a state of mind is not the precise point to be established but where it is nevertheless sought to introduce some evidence of state of mind to serve as circumstantial evidence from which it might be inferred that certain conduct might logically follow. The classic case illustrating the admission of statements for this purpose is Mutual Life Insurance Company of N. Y. v. Hillmon, 1892, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706. That case involved a determination of the identity of a deceased person. As circumstantial evidence of the fact that one Walters, who was missing, had been in the locality of the Kansas-Colorado border where the body was found and that therefore it could have been his body, letters were introduced which had been written by Walters from

Wichita, Kansas, to his fiancée and relatives in Iowa telling them that he was going to Colorado. Such letters were held to be admissible by the United States Supreme Court on the theory that they showed a state of mind consistent with the doing of an act from which it might be inferred that the act was in fact done.

The Hillmon case has had wide recognition and has been approved and followed by the Iowa Supreme Court in the case of Owens v. Iowa County, 1918, 186 Iowa 408, 169 N.W. 388. In the latter case, statements of a decedent who had been killed in an automobile accident to the effect that he had no reason to be in a hurry on his intended auto trip were admitted to rebut evidence that the decedent had reason to be driving fast in order to catch a train.

It is the position of the defendants that the exception to the hearsay rule (if it may be called such) exemplified by the Hillmon case is limited to the admission of statements made before a purported act was to have occurred to show a likelihood that it did in fact occur or occurred in a particular manner. They urge, however, that statements made after the time the act is alleged to have occurred are not admissible for this purpose. Some support for the defendants' position as a general rule of evidence is found in Wigmore's treatise (VI Wigmore, Sec. 1736 (3d ed. 1940)) wherein the author speaks of testators' statements. Wigmore there asserts:

"Post-testamentary statements * * * affirming or denying the fact of execution, contents, or revocation of a will, are, in their first and simple aspect, to be taken as mere *assertions of an external fact,* offered as evidence of the truth of the assertion. They do not come within the present Exception, nor within any other of the established ones. They are therefore ordinary hearsay assertions, and are inadmissible."

That author then goes on to say:

"But a few Courts (increasing perhaps in numbers), while facing the truth that such utterances are used distinctly as hearsay assertions, have frankly invoked a *special exception* to the Hearsay rule in order to admit them."

In McCormick, Evidence, Sec. 271 (1954), the author asserts:

"In wills cases the special need for the hearsay use of the testator's declarations to show his previous acts is apparent. The testator is dead and is usually the one who best knew the facts, and is often the only one who had any knowledge of them. * * * Accordingly by the preponderance of recent decisions, the testator's declarations made after the alleged event are received to show that he has or has not made a will or a will of a particular purport, or has not revoked his will."

The Iowa Supreme Court has admitted post testamentary statements made by a testator to rebut the presumption of revocation in regard to a missing will known to have been in the testator's possession shortly before his death. Goodale v. Murray, 1940, 227 Iowa 843, 289 N.W. 450, 460, 126 A.L.R. 1121. Evidence of post testamentary statements by a testator has also been admitted by the Iowa Court in order to prove due execution of the will. Nixon v. Snellbaker, 1912, 155 Iowa 390, 136 N.W. 223. Such statements have been held inadmissible in Iowa, however, in order to aid in the interpretation of a provision in a will. Schmidt v. Claus, 1958, 250 Iowa 314, 93 N.W.2d 592, 595; In re Estate of Miller, 1952, 243 Iowa 920, 54 N.W.2d 433, 36 A.L.R.2d 139. An excellent discussion of hearsay evidence appears in Symposium, Hearsay Evidence, 46 Iowa Law Review, Winter 1961. The admissibility of declarations of state of mind to show previous conduct is discussed therein in an Article by M. C. Slough, Spontaneous Statements and State of Mind, 46 Iowa Law Review 224, 237–40.

In resolving the controversy of the admissibility of the testimony as to statements made by the insured in the present case, it is not necessary to look beyond

disputes of a somewhat similar nature in order to find precedent. There are a number of cases in the Federal reports involving disputes over who is to receive the proceeds of National Service Life Insurance policies and this type of evidence has been offered in many of them. Most of these cases involve disputes arising out of an alleged attempt by the insured to change the beneficiary of his insurance which is never completed in the sense of being received in the proper form by the Veterans Administration. In that type of dispute, it is necessary for the party trying to establish that an attempted change should be given effect to show some indication of an intent on the part of the insured to make such a change and also to show that some written step had been taken by the insured toward achieving that result. Bratcher v. United States, 8 Cir., 1953, 205 F.2d 953, 955; Senato v. United States, 2 Cir., 1949, 173 F.2d 493, 495; Roberts v. United States, 4 Cir., 1946, 157 F.2d 906, 909. It is not surprising, therefore, that statements made by the insured as to his past actions, or letters or other papers written by the insured describing what he had done about his insurance affairs, have sometimes been relied upon to establish these elements. For purposes of analysis, two classes of cases emerge. In the first type, statements made by the insured have been relied upon to establish that the required written act was in fact performed although there is no evidence of the writing itself. In the second type, there is some writing relied upon as constituting the necessary affirmative act and letters and statements of the insured both before and after the time the writing was made have been used as an aid to the proper interpretation of the writing. In many of these cases the problem of admissibility of such evidence has not been considered by the court and it is not indicated whether objection had been made to such testimony.

Cases where oral statements of the insured pertaining to his prior insurance affairs have been successfully introduced in evidence to establish that insured had performed an act in writing changing his beneficiary include: Kendig v. Kendig, 9 Cir., 1948, 170 F.2d 750; Mitchell v. United States, 5 Cir., 1948, 165 F.2d 758; Wilkens v. United States, D.C.1955, 134 F.Supp. 408; Lindsey v. United States, D.C.1954, 121 F.Supp. 1; Zabor v. United States, D.C.1953, 113 F.Supp. 287.

In the cases of Aguilar v. United States, 9 Cir., 1955, 226 F.2d 414; Farmakis v. Farmakis, 1949, 84 U.S.App. D.C. 297, 172 F.2d 291, certiorari denied 1949, 337 U.S. 958, 69 S.Ct. 1535, 93 L.Ed. 1757; Flood v. United States, 3 Cir., 1949, 172 F.2d 221; Kendig v. Kendig, supra; and Gann v. Meek, 5 Cir., 1948, 165 F.2d 857, letters or other written statements executed by the insured stating that he had acted to change his beneficiary have been used as evidence to establish such an act. In only two of the preceding cases was the question of the admissibility of the statements, letters, or memorandums discussed. In Kendig v. Kendig, supra, objection was made to the admission of a written memorandum which insured had filed with his commanding officer listing therein the beneficiary under his National Service Life Insurance. Since the beneficiary there listed was different from the one listed with the Veterans Administration, the memorandum was offered to show that insured thought that he had changed the beneficiary of his insurance from which it might be inferred that he had taken sufficient affirmative action to do so. As to the contention that the statements in the memorandum were hearsay, the Court stated (at page 751 of 170 F.2d):

"The statement is not hearsay nor is its probative value limited to its bearing on the insured's intent, if indeed it bears more than retrospectively on that subject. It has dignity at least as evidence of a past act— much greater dignity, we think, than has an oral declaration * * *."

The Court in the Kendig case also considered certain testimony as to oral declarations made by the insured as to

past acts in reaching its decision but did not discuss the admissibility of that evidence.

In Gann v. Meek, supra, the majority of the Court did not discuss the admissibility of a letter written by the insured which referred to action taken in regard to the beneficiary of his government insurance. From the letter the Court determined that insured thought he had changed the beneficiary of his insurance and from this inferred that he must have taken sufficient steps to do so. The dissenting opinion, however, labeled the letter in question as entirely hearsay and said it should have been excluded from evidence.

In the case of Kingston v. Hines, D.C. 1926, 13 F.2d 406, which concerned an attempt to establish that a change of beneficiary had been made under a policy of War Risk insurance executed under the War Risk Insurance Act of 1924, the mother of the insured tried to introduce a letter written to her by the insured telling her that he had changed the beneficiary of his War Risk insurance so that she was the beneficiary. There was no other evidence of any attempt by the insured to make such a change. The Court held that the letter in question was hearsay and not admissible for purposes of inferring therefrom that insured had taken some affirmative steps to change his beneficiary. Kingston v. Hines, supra, was recently followed in the case of Giberson v. Wilson, Ky.1959, 322 S.W.2d 466, 468, which involved an alleged attempt to change a beneficiary under a policy held with a commercial insurance company.

Cases wherein written or oral statements of the insured, made sometime after the execution of a writing, have been considered by the Court in determining that the writing in question was intended as an affirmative action toward the changing of the beneficiary under the insured's policy include: Wall v. Haas, 5 Cir., 1960, 283 F.2d 656; Prose v. Davis, 7 Cir., 1949, 177 F.2d 478; Senato v. United States, 2 Cir., 1949, 173 F.2d 493; Shapiro v. United States, 2 Cir., 1948, 166 F.2d 240, certiorari denied Shapiro v. Shapiro, 1948, 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779; Moore v. United States, D.C.1955, 129 F.Supp. 456; Joseph v. United States, D.C.1950, 89 F.Supp. 144.

In Shapiro v. United States, supra, the question involved was whether the insured in filling out a form ordinarily used to designate the beneficiary of his six months' gratuity pay was in fact attempting to change the beneficiary under his National Service Life Insurance. The trial court held that a change in beneficiary under that policy was effected. On appeal that holding was affirmed. The Court stated (166 F.2d at page 242):

> "It has already been made plain that the instrument designating Shapiro's widow as his beneficiary did not state in terms whether she she was to be the beneficiary of his insurance policy or of the six months' gratuity payment. In such a situation testimony as to oral statements of the insured was admissible to solve the ambiguities."

The Court of Appeals for the Tenth Circuit has apparently drawn a distinction between the use of post statements or letters of the insured as evidence that he had previously performed an act toward the changing of his beneficiary and their use in determining insured's intent in regard to that act when such act is otherwise established. In Littlefield v. Littlefield, 10 Cir., 1952, 194 F.2d 695, the insured had designated his wife as the principal beneficiary of his National Service Life Insurance and his children as the contingent beneficiaries. Following insured's death the father of the insured presented a claim for benefits on the theory that the insured had changed his beneficiary designation in favor of his father some time before his death. As evidence of this contention the father of the insured relied upon letters he had received from the insured. Earlier letters indicated that the insured intended to change the beneficiary designation under his policy in favor of his children. A later letter stated that he

had changed his beneficiary designation in favor of his father and that the latter was to see that the children of the insured got their share. In discussing the admissibility of the letters, the Court stated (at page 697 of 194 F.2d):

"The letters were admissible for the purpose of showing an intent upon the part of the Insured to change the beneficiary, but they were not admissible for the purpose of showing that he had changed the beneficiary."

The case of Foster v. Winingham, 10 Cir., 1948, 169 F.2d 46, was relied upon in Littlefield v. Littlefield, supra, in the Court's ruling as to the admissibility of the letters in question. The Foster case is like the present case in that it involves an interpretation of a designation of beneficiary filed with the Veterans Administration in proper form. The policy in question was for $5,000 and insured had inserted the name and address of his wife in the blank on the application which called for the designation of a principal beneficiary. His daughter's name was inserted in the blank which called for designation of a contingent beneficiary, and her name and address was also inserted in the space for designating the individual to whom the policy was to be mailed. Both the wife and the daughter made claims to the $5,000 proceeds. In construing the designation, the Court admitted letters written by the insured to his daughter stating that he had taken out insurance in the amount of $5,000 for her and was mailing her papers to her. This letter taken in conjunction with the fact that insured placed the custody of the policy in the hands of his daughter and that he already had a $5,000 National Service Life Insurance policy in which his wife was named as principal beneficiary was held to be sufficient evidence to establish that insured had intended, in the application in question, to make his daughter the principal beneficiary of the policy. In discussing the admissibility of the letter, the Court stated (at pages 48–49 of 169 F.2d):

"But the admissibility of the letter in evidence is challenged. The argument is that it was hearsay, a mere conclusion, a self-serving declaration, and not binding on the wife. Ordinarily writings or unsworn declarations which are no part of the res gestae are not admissible in evidence. But where the existence of a particular intent of a person at a certain time and in connection with a certain incident or transaction becomes a distinct and material fact to be proved in a chain of circumstances, words spoken or written by such person which have a bearing upon that intent are admissible. They are not admissible for the purpose of establishing the substantive fact that the person acted or failed to act. They are admissible only for the purpose of throwing light upon the question of his intent in acting or failing to act. The letter which the insured wrote his daughter was not admissible as a narrative of the substantive fact that he took out insurance for her benefit. But it was admissible as a proper token of his intent and purpose in taking out the insurance. And there is no indication in the record that the trial court considered the letter for any other purpose."

■■ It is the view of the Court that the testimony offered in the present case relating to statements made by the insured to the effect that he had made his wife the beneficiary of his National Service Life Insurance policy are admissible for the purpose of throwing light upon the question of his intent in regard to the application he filled out on September 27, 1951. They are not offered as evidence of a past act. The evidence of that act is before the Court in the form of the application in question. That application is ambiguous and therefore in its interpretation the intent of the insured becomes a material fact to be proved. Evidence of statements made subsequent to the act in question as to insured's understanding of the effect of

the act is circumstantial evidence from which his intent at the time of the act may be inferred. See Moore v. United States, D.C.1955, 129 F.Supp. 456, 458; VI Wigmore, Sec. 1736 at page 117 (3d ed. 1940).

In the present case it is to be noted that the designation of beneficiary made in 1951 which is here in controversy was made in conjunction with an application for a renewal of the contract then in existence between the insured and the Government and plaintiff was the existing principal beneficiary thereunder by virtue of the change of beneficiary made in 1948. The application in controversy is in no way labeled as providing for a change of beneficiary. It is undoubtedly true that the insured could have changed his beneficiary on the form in question but it could also have been that he merely intended to list the beneficiaries in the same manner as they were provided for under the policy in existence at the time and through oversight neglected to specify whether the beneficiaries named were principal or contingent. Except for this omission, the designation made was almost exactly as it had been on the change of beneficiary form executed in 1948 following his marriage. There is no special column provided in the form in question for designating whether beneficiaries are principal or contingent. The column for name and address of beneficiaries is the only feasible place to include such information, and the instructions immediately preceding that column do not indicate that such information is to be there included. This may only be inferred from an instruction further up the page requesting that beneficiaries be labeled as principal or contingent.

The insured attended the Iowa State University of Agriculture and Mechanical Arts under the so-called G.I. Bill. The hospital expenses of the insured and his funeral expenses were paid by the plaintiff. It is indicated that the insured did not require financial assistance from the defendants while he attended the University or during his married life.

In the present case the burden was upon the plaintiff to establish that she was the principal beneficiary of the policy in question. It is her claim that the evidence is such as to entitle her to judgment for the full amount of the policy as a matter of law.

In the case of United States v. Grannis, 4 Cir., 1949, 172 F.2d 507, certiorari denied 1949, 337 U.S. 918, 69 S.Ct. 1160, 93 L.Ed. 1727, the Government sought to recover forfeitures and penalties under the False Claims Act. The defendants presented no evidence. The trial judge submitted the case to the jury which returned a verdict in favor of the defendants. On appeal the Court of Appeals held that it was error for the trial court to so do and reversed with instructions to enter a judgment in favor of the plaintiff.

In the case of Floyd v. Ring Construction Corporation, 8 Cir., 1948, 165 F.2d 125, at page 129, the United States Court of Appeals for this Circuit stated: "Where the evidence is 'so overwhelming on one side as to leave no room to doubt what the fact is,' the court should direct a verdict."

The federal rule, and not the state rule, is applicable. However, the Iowa Supreme Court in the case of Gregg v. Middle States Utilities Company, 1940, 228 Iowa 933, 293 N.W. 66, 132 A.L.R. 415, called attention to what seem to be generally recognized rules in connection with the matter of directing a verdict. It stated (at page 77 of 293 N.W.):

"* * * Under the record made no verdict of a jury against the plaintiffs on any of these issues could possibly stand.

"To hold otherwise would be contrary to the rule so well stated by Justice Hamilton in Baker v. General American Life Ins. Co., 222 Iowa 184, 188, 268 N.W. 556, 558: 'But when the evidence all points in one direction, is not in material conflict on the issues involved, and

there are no circumstances which tend to impair or impeach the same, and is not susceptible of inherent weaknesses, improbabilities, and incongruities, which in and of themselves naturally arise to contradict or impeach the weight and credibility of the utterances of the witnesses, then it can most certainly be said as a matter of law that the record presents a case about which the minds of reasonable men cannot differ, and the court is, under such circumstances, warranted in directing a verdict, and there is no sound principle standing in the way of such action on the part of the court.' And by Justice DeGraff in Kern v. Kiefer, 204 Iowa 490, 492, 215 N.W. 607, 608: 'A verdict should be directed: (1) Where but one reasonable conclusion can be drawn from the proof adduced. (2) Where the questions of fact are clearly established by unconflicting evidence. (3) Where there is no substantial evidence to overcome a prima facie case. (4) Where by giving the opposite party the benefit of the most favorable view of the evidence, the verdict against him is demanded.' "

■ In the present case in passing upon the question as to whether the plaintiff is entitled to judgment as a matter of law, the defendants are entitled to have the evidence and the inferences to be drawn therefrom viewed in the light most favorable to them. The defendants presented no evidence. In substance, they rely solely upon what appears in the designation of beneficiaries in question. It would seem that, in substance, it is their contention that because they and the plaintiff were listed as beneficiaries without designation as to the matter of principal and contingent beneficiaries, it is to be inferred that the insured intended that they and the plaintiff were to share the proceeds of the policy equally. It would seem that such inference is weakened at its inception by the fact that the plaintiff was named first and was designated to receive $10,000 under the policy, which exhausted the full amount of the policy. There is no surrounding fact or circumstance which lends strength to the inference relied on. On the contrary, all of the surrounding facts and circumstances weaken that inference. The insured in the designation of beneficiaries which had preceded the designation in question designated the plaintiff as the only principal beneficiary. There was no change in the circumstances between the two designations which would lend support to the claim that the insured intended to cut down the amount of insurance payable to the plaintiff. No reason appears or is suggested as to why he might desire to so do. It is the view of the Court that whatever strength the inference may have had to start with it was weakened beyond the point of evidentiary vitality by the surrounding facts and circumstances.

■ It is the view of the Court that the evidence in the present case points to but one conclusion and that is that the insured intended the plaintiff to be the principal beneficiary of the policy and the defendants to be the contingent beneficiaries, and that it was only by manifest inadvertence that the words "principal beneficiary" did not appear in connection with the name of the plaintiff and the words "contingent beneficiaries" did not appear in connection with the names of the defendants in the beneficiary designation.

It is the view of the Court that if the case were submitted to a jury and a verdict rendered in favor of the defendants the verdict could not stand.

It is the holding of the Court that as a matter of law the plaintiff is entitled to judgment against the Government for the full amount of the policy, to wit, $10,000.

It is ordered that judgment shall be entered in accord with this ruling.